LE BLANC, Justice.
 

 This is a suit by the mother of an illegitimate child to establish its paternity, coupled with a demand against the alleged father for its support.
 

 Ruby Rousseau, appearing herein as tutrix of the minor, Philip John Bartell, alleged that the said Philip John Bartell was born on May 19,1949, of the union of Limey Bartell, the defendant, and herself; that both she and the defendant are of the white r'acej are unrelated to 'each other within the prohibited degrees, and were' unmarried at the time of the conception of the child; that the child is in necessitous circumstances and unable to earn his own living, or support himself; and that Limey Bartell, being the father of the child, is obligated to contribute to the support of the child.
 

 She further alleged that she made demand on defendant to support the child; that defendant agreed to do so, and that defendant contributed $75 per month for its support until August of 1950, at which time he stopped contributing to its support altogether.
 

 She prayed for judgment decreeing Limey Bartell to be the father of the minor, Philip John Bartell, and ordering him to pay alimony of $100 per month for the assistance and support of the child.
 

 By supplemental petition, she alleged that Limey Bartell, in addition to supporting him, acknowledged the said child in private-conversations, once to one Pete Rousseau, her brother, a second time to plaintiff, and a third time to Edwin A. Edwards, one of her attorneys, and that he also acknowledged him by his actions in agreeing to pay the medical expenses incurred in the birth of the child, and in agreeing to take care of him and in contributing to his support.
 

 Defendant denied each allegation of plaintiff’s original and supplementary petitions.
 

 • After trial on the merits, there was judgment declaring Limey Bartell to be the father of. the child, Philip John Bartell, is
 
 *606
 
 sue of Ruby Rousseau, and condemning him to pay $35 per month alimony beginning June 1, 1952, to Ruby Rousseau for the benefit of said child, for its support.
 

 Defendant was granted a suspensive appeal to this Court. Plaintiff has answered the appeal, praying that the amount of alimony be increased to $100 a month.
 

 Plaintiff met the defendant in the Spring of 1948 at her home. The occasion of the meeting was an invitation by defendant and his niece, Mrs: Paula Boriskie, to the plaintiff and her parents to have dinner at Mrs. Boriskie’s home. After this occasion they saw each other practically every weekend for almost a year. After the first five or six meetings, they became intimate with each other, and this relationship continued throughout the period that they were seeing each other.
 

 In September of 1948, plaintiff informed the defendant that she was pregnant. He continued to see her until January of 1949. From that time he merely wrote to her, making excuses for not seeing her. On February 14, 1949 he remembered her by sending her a box of candies.
 

 In April, 1949, Ruby Rousseau and her brother went to see defendant concerning the expected child. He agreed to send her some money for “current expenses”. However, no money was sent.
 

 In May of 1949, the child was born, and' in August, 1949, plaintiff contacted Edwin W. Edwards, an attorney, and a meeting was arranged with defendant. At the meeting, Limey Bartell agreed to pay $75: a month for the support of the child. The first payment was then made in cash and after this he sent approximately ten checks of $75 each, payable to “cash”, to Mr. Edwin W. Edwards. The proceeds were given to Ruby Rousseau for support of the child.
 

 When the payments were discontinued, this suit was filed.
 

 Limey Bartell admitted his intimacies with the plaintiff and admitted making eight or ten payments to her attorney. He denied ever having said the child was his and said he made the payments because the plaintiff and her attorney were harassing him.
 

 The suit is brought under the provisions of Articles 209 and 210 of the LSA-Civil Code, which prescribe as follows:
 

 “Art. 209. In the case where the proof of paternal descent is authorized by the preceding article, the proof may be made in either of the following ways:
 

 “1. By all kinds of private writings, in which the father may have acknowledged the bastard as his child, or may have called him so;
 

 “2. When the father, either in public or in private, has acknowledged him as his child, or has called him so in conversation, or has caused him to be educated as such;
 

 “3. When the mother of the child was known as living in a state of con
 
 *608
 
 cubinage with the father, and resided as such in his house at the time when the child was conceived.”
 

 “Art. 210. The oath of the mother, supported by proof of the cohabitation of the reputed father with her, out of his house,
 
 is not sufficient to establish natural paternal descent,
 
 if the mother be known as a woman of dissolute manners, or as having had an unlawful connection with one or more men (other •than the man whom she declared to be the father of the child) either before •or since the birth of the child.”
 

 The trial judge, in his written reasons for judgment, stated that art. 209 was not applicable to the case, and that plaintiff must rely on art. 210. He then decided that the illicit relations between Ruby Rousseau and Liméy Bartell in an automobile constituted cohabitation of the reputed father with the mother “out of his house” and that defendant had failed to show that the mother was known as a woman of dissolute manners, or that she had had an unlawful connection with one or more men (other than the man whom she declares to be the father of the child) either before or since the birth of the child.
 

 Appellant contends the trial judge erred in each of his findings relative to art. 210 of the LSA-Civil Code and that he also erred, in awarding alimony where no evidence whatsoever was offered to show that the child was in absolute need thereof.
 

 We find no error in the judgment of the trial judge in his application of art. 210 of the LSA-Civil Code to the facts of the case. We do think however, that art. 209 also has application. This is not a case where the paternal descent is shown merely by the oath of the mother supported by proof of the cohabitation of the reputed father with her. There is an admission on his part of at least ten monthly payments to the mother for the support of the child. A man placed in the circumstances of this defendant would hardly be expected to pay that amount of money for such purpose unless he felt the sting of a guilty conscience. We do not believe that he was harassed, as he now contends, into doing so. Moreover, there is his reputed admission that he was intimate with the mother before and after the time she became pregnant and while he did not ever expressly acknowledge the child as his own, he did say that it was possibly his, or that he had no way of knowing whether it was his or not. Whereas he denies ever having told plaintiff’s attorney that “You know, and I know that it is my child, but you would have a hard time proving it,” he never emphatically denied that it was his child.
 

 We think that all of this testimony constitutes sufficient acknowledgment in compliance with art. 209, LSA-C.C., and we entertain no doubt as to the application of art. 210, LSA-C.C., as was concluded in the judgment of the lower Court.
 

 
 *610
 
 The article has heretofore been quoted in full. When broken down it is made to appear that the oath of the mother, supported by proof of the cohabitation of the reputed father,
 
 out of his house,
 
 will not be accepted as proof sufficient to establish paternity,
 
 if
 
 (1) the mother be known as a woman of dissolute manners, or (2) one having had an unlawful connection with one or more men (other than the man she declares is the father of the child) either before or since the birth of the child.
 

 In this case the admitted cohabitation took place in an automobile parked in front of the plaintiff’s home and therefore •it was outside of the declared father’s house, so there remains two other factors involved in the article, namely, is the plaintiff known as a woman of dissolute manners and is she known to have had an unlawful connection with a man other than the defendant either before or since the birth of the child.
 

 The record shows the plaintiff to have been a mature woman who had been employed as a school teacher for twenty-two years, seventeen of which were spent in the same school. The dictionary meaning of the word “dissolute” is “loose from restraint ; especially loose in morals and conduct; debauched.” It is unreasonable to think that in a rural community, such as the one in which she taught school, where every one’s character is more or less known, that the school authorities would have continued employing her as long as they did had she been a woman that was debauched, loose in morals and conduct. Her relations with the defendant were known to no one but themselves until the time she became aware of the fact that she had conceived the child and she then confided them in her brother. Indeed, the defendant himself does not charge her with dissoluteness unless it be by reference to an indiscretion with a young man in 1945 about which she had previously volunteered the information and with some minute details concerning the act of copulation he had with her.
 

 There is a complete lack of proof therefore that plaintiff was known as a woman of dissolute manners and this brings us next to the remaining factor involved in art. 210, LSA-C.C, that is, is she known to have had an unlawful connection with a man other than defendant before or since the birth of the child.
 

 Had the plaintiff herself not freely testified to an act of indiscretion already referred to, in 1945, we doubt that anything would have been said on this point. No. doubt she was indiscreet in that instance but for reasons which she states and which it is unnecessary here to state, the act committed by them did not result in sexual intercourse and there was no unlawful connection between them.
 

 As to the alimony, the defendant admitted earning $500 a month plus bonuses, the latter dependent on the earnings of his employer. Because of this fact, the award of $35 per month seems to be absurdly low. However, alimony is not based on the means
 
 *612
 
 ■of the father to pay,- but'on the need of the illegitimate child, LSA-C.C. art. 240. There is no- evidence of the necessitous circumstances of the child or of the need for support as required by art. 242(2) of the Code. Other than the allegations of the petition and the affidavit of forma pauperis attached thereto, plaintiff made no attempt to show the needs of the child. We find ourselves unable therefore to increase the amount of alimony awarded as prayed for in the answer to the appeal. Should-the needs of the child increase in the future the mother should be allowed to show that to the Court in a proper proceeding and obtain the redress she may be entitled to.
 

 Judgment affirmed.