AYRES, Judge.
This is an action to establish the paternity of an illegitimate infant, and to obtain alimony for its support. The child, through his mother as natural tutrix, contends that he was born of the union of Betty Ferguson and the defendant, Joseph A. Cascio. The trial court concluded that the paternity of the child was established. The defendant was, therefore, decreed the natural father of the child and condemned to pay alimony for its support in the sum of $50.00 per month. From the judgment thus rendered and signed, defendant perfected this appeal.
The issues presented for resolution are factual in character and relate to the sufficiency of the evidence to support the judgment. A brief reference must therefore be made to the facts as disclosed by the record.
Covering a period exceeding a year and terminating in August, 1959, Betty *472 Ferguson and Joseph A. Cascio dated frequently and, during that time, engaged in sexual intercourse with a frequency of twice per week. During April, 1959, Betty Ferguson became pregnant and, on January 19, 1960, she gave birth to the child, the paternity of whom is made the subject matter of this litigation.
No evidence controverts the testimony of Betty Ferguson that, during the aforesaid period of time, she had no sexual relation with any man other than the defendant. After becoming aware of her pregnancy, Betty Ferguson informed the defendant of that fact, as well as giving him to understand that he was the father of the then unborn child.
In August, 1959, defendant gave Betty Ferguson the sum of $50.00 which, in his testimony, he denominated “a loan.” This was for the purpose of paying her expenses in leaving town to have her baby. She, in fact, left for New Orleans where the baby was born. After the baby was born, defendant was contacted by a representative of the Department of Public Welfare and was informed that the mother had reported that he, the defendant, was the father of her child.
Defendant made no denial of the charge placed against him. In response to telephone calls and letters, defendant, on at least two occasions, contributed money and, on another occasion, clothing for the minor. Numerous letters of defendant to the mother, written after the birth of the child, were introduced in evidence. No good purpose could be served by perpetuating in this opinion a verbatim statement of the language of this correspondence. It suffices to state that defendant was solicitous of the child’s welfare and expressed a desire to contribute to its support. On numerous occasions he promised to make regular payments for the support of the child. He even, offered to find a home for the child and to arrange for its adoption. In compliance with his request, pictures of the child were sent him. Replying to the letter accompanying the pictures, defendant wrote Betty Ferguson that he “was very happy to get them and must say that he [the baby] is a nice looking kid. And he sure is. getting big. I can sure see that he looks, like me.” At no time, not even while testifying as a witness, did defendant deny that he was the father of the child.
This action is brought under the provisions of the following articles of the Civil Code, which recite:

LSA-C.C. Art. 208.

“Illegitimate children, who have not been legally acknowledged, may be allowed to prove their paternal descent.”'

LSA-C.C. Art. 209.

“In the case where the proof of paternal descent is authorized by the preceding article, the proof may be-made in either of the following ways :•
“1. By all kinds of private writings,, in which the father may have acknowledged the bastard as his child,, or may have called him so;
‘2. When the father, either ini public or in private, has acknowledged him as his child, or has called him so-in conversation, or has caused him to. be educated as such;
“3. When the mother of the child’ was known as living in a state of concubinage with the father, and resided as such in his house at the time.when the child was conceived.”

LSA-C.C. Art. 210.

“The oath of the mother, supported1 by proof of the cohabitation of the reputed father with her, out of his house, is not sufficient to establish natural paternal descent, if the mother be known as a woman of dissolute-manners, or as having had an unlawful! connection with one or more men (other than the man whom she declares, to be the father of the child) either before or since the birth of the child.”'
*473 In applying these principles to similar facts, the court, in Rousseau v. Bartell, 224 La. 601, 70 So.2d 394, held that the proof offered was sufficient to constitute an acknowledgment of the paternity of a child. 'The court stated:
“This is not a case where the paternal descent is shown merely by the oath of the mother supported by proof of the •cohabitation of the reputed father with her. There is an admission on his part ■of at least ten monthly payments to the mother for the support of the child. A man placed in the circumstances of this •defendant would hardly be expected to pay that amount of money for such purpose unless he felt the sting of a :guilty conscience. We do not believe ■that he was harassed, as he now contends, into doing so. Moreover, there is his reputed admission that he was intimate with the mother before and after the time she became pregnant and while he did not ever expressly acknowledge the child as his own, he did say that it was possibly his, or that he had no way of knowing whether it was his or not.”
With further reference to the applicability of the provisions of Art. 210, it may be pointed out that the admitted cohabitation took place in Betty Ferguson’s apartment and in tourist courts and, therefore, out of the house of the reputed father. Under such a state of facts, two other factors are concerned: Was the plaintiff known as a woman of dissolute manners, and was she known to have had unlawful connection with a man other than defendant either before or since the birth of the child? As to these factors, it may be pointed out that the mother’s relations with the defendant were known, so far as the record establishes, to no one but themselves until the time she became aware of the fact of her pregnancy.
As defined in the Rousseau case, the word “dissolute” means “loose from restraint; especially loose in morals and conduct; debauched.” That Betty Ferguson possessed such traits of character has not been established. The trial court reached this conclusion, as we so do, notwithstanding the testimony of close personal friends and cousins of the defendant who testified of their own illicit relations with Betty Ferguson during 1956 and 1957, which testimony the court obviously found unworthy of belief. This testimony, which was emphatically denied by her, we may point out, relates to dates long prior to the conception of the child. There is, therefore, a complete lack of proof that Betty Ferguson was known as a woman of dissolute manners or that she had an unlawful relationship with a man other than defendant before or since the birth of her child.
Finally for consideration is the award of support for the child. Defendant’s earnings are $114.00 a week, from which there are deductions aggregating $21.50, leaving a net of $92.50 per week. Betty Ferguson is shown to have a net income of $43.00 per week. By virtue of her employment, someone other than the mother must attend the child during the mother’s working hours. These services must be paid for and currently are paid out of the mother’s earnings. The defendant’s first duty is to his child. Considering his income, the defendant is well able to pay the award as made. We find no error in that regard.
The judgment appealed is therefore affirmed at defendant-appellant’s cost.
Affirmed.