RICHARD H. GAUTHIER, Judge pro tem.
This is a suit by the natural mother and natural grandfather of an illegitimate child to establish the paternity of the child and to fix the responsibility of support and the responsibility for debts incurred in the birth and raising of said child.
*542 The trial judge, after a trial on the merits but before judgment, reopened the suit by “Order Ex Proprito Motu” for the purpose of receiving evidence as to the date and circumstances of a later marriage by the plaintiff Bobbie McConkey Gray to Jimmy Ray Gray, as well as to the date and circumstances of the birth of a child born of that marriage, Jimmy Ray Gray, Jr.
The trial court rejected all demands of the plaintiffs and they were granted a de-volutive appeal to this court.
The trial judge concluded in his reasons for judgment that the child, Jimmy Ray Gray, Jr., was conceived prior to the marriage between Bobbie McConkey Gray and Jimmy Ray Gray; and that Bobbie Mc-Conkey had an unlawful connection since the birth of the child, Tammy McConkey, who is the subject of this suit. Therefore, plaintiffs had not established paternal descent within the meaning of LSA-Civil Code Article 210.
Plaintiff-appellants contend that the trill judge erred in the following respects: in not awarding judgment based on facts from testimony at the trial; in allowing proof concerning time of conception of the Gray child, which child is presumed legitimate under LSA-Civil Code Article 186; and in the finding of fact that the Gray child was conceived prior to the date of marriage.
The jurisprudence of this state has consistently followed the four methods of proof of paternity set forth in LSA — Civil Code Articles 209 and 210. Rousseau v. Bartell, 224 La. 601, 70 So.2d 394 (1954); Ferguson v. Cascio, 158 So.2d 471 (La.App. 2nd Cir. 1963), and Ogborn v. Bush, 255 So.2d 199 (La.App.), cert. denied, 260 La. 412, 256 So.2d 293 (1972).
LSA — Civil Code Article 209 provides:
“In the case where the proof of paternal descent is authorized by the preceding article, the proof may be made in either of the following ways:
“1. By all kinds of private writings, in which the father may have acknowledged the bastard as his child, or may have called him so;
“2. When the father, either in public or in private, has acknowledged him as his child, or has called him so in conversation, or has caused him to be educated as such;
“3. When the mother of the child was known as living in a state of concubinage with the father, and resided as such in his house at the time when the child was conceived.”
Under the foregoing article three methods of proof of paternity are provided. Section 1 provides for proof by private writings. There is no evidence of any priviate writings in the record. Section 3 covers a situation where the mother lived in concubinage with the father in his house at the time of conception. Again, no evidence of such acts are found in the record.
Section 2 provides for a situation wherein the alleged father, has either in public or in private, “acknowledged him as his child, or has called him so in conversation, or has caused him to be educated as such.” The record reflects that a cousin and a sister of Mrs. Gray testified that the defendant had private conversations with them concerning the cost of doctor and hospital services incidental to child birth and that the defendant could not afford to get married and wanted to wait until he was out of college, which conversations Robert Pinto denies.
There is no testimony in the record that the defendant actually admitted that he was the father of the child, had acknowledged him or called him so in conversation, nor did any of the witnesses testify to such admissions. The sister and cousin could not state with any degree of accuracy the time of or the particular statements of Robert Pinto, nor did they testify that the defendant admitted responsibility for the *543 pregnancy. We are therefore of the opinion that the plaintiffs failed to establish by a preponderance of the evidence proof of paternity within the meaning of C.C. Article 209.
There remains only for consideration the method of proof set forth in LSA-Civil Code Article 210, which reads as follows:
“Art. 210. The oath of the mother, supported by proof of the cohabitation of the reputed father with her, out of his house, is not sufficient to establish natural paternal descent, if the mother be known as a woman of dissolute manners, or as having had an unlawful connection with one or more men (other than the man whom she declared to be the father of the child) either before or since birth of the child.”
Appellants contend the trial judge erred in the allowing testimony concerning time of conception of a child which is presumed legitimate under LSA — Civil Code Articles 186 and 189, which read as follows:
“Art. 186. The child capable of living, which is born before the one hundred eightieth day after the marriage, is not presumed to be the child of the husband; every child born alive more than, six months after conception, is presumed to be capable of living.”
“Art. 189. The presumption of paternity as an incident to the marriage is also at an end, when the remoteness of the husband from the wife has been such that cohabitation has been physically impossible.”
Articles 186 and 189 deal with the presumption of paternity of the husband of the mother and legitimacy of the child of the marriage. These articles are contained in Section - 1 (Of Legitimacy Resulting From Marriage) of Chapter - 2 (Of Legitimate Children) of Title VII - Of Father And Child. Article 210 is in Section - 2 (Of The Acknowledgment Of Illegitimate Children) of Chapter - 3 (Of Illegitimate Children) of Title VII. The purpose and nature of the former is to establish presumptions of paternity and legitimacy of children born during a marriage. The purpose of Article 210 is to establish a method of proof of natural paternal descent.
In the instant case we are concerned only with the paternity of an illegitimate child, Tammy McConkey, born to an unwed mother. The paternity or legitimacy of Jimmy Ray Gray, Jr. is not being questioned nor is it at issue. Defendant seeks only to introdude evidence as to the time of conception of the Gray child, not to prove or disprove that child’s legitimacy.
A careful reading of the Civil Code Articles in Title VII, as well as exhaustive research into the jurisprudence, conclusively shows that there is no prohibition against determining the time of conception of a presumed legitimate child when attempting to prove an unlawful connection on the part of that child’s mother who seeks to establish the paternity of an illegitimate child born to her previously.
The record reflects that Mrs. Gray married her husband on April 30, 1969, and that their son was born on November 29, 1969. Dr. W. P. Bradburn, III, plaintiff’s physician for that pregnancy, stated in deposition that he first examined Mrs. Gray on June 6, 1969. Dr. Bradburn testified that the plaintiff was between six and eight weeks pregnant at the time of that initial examination; that she advised him at that time that her last menstrual period occurred on March 29, 1969; that the size of her uterus was compatible with a conception of six to eight weeks; that he calculated her due date for delivery to be January 5, 1970; that the baby was born four to five weeks premature; and that the baby was much too heavy at birth for a seven month child.
A detailed examination of the hospital records of Touro Infirmary confirm Dr. Bradburn’s testimony. The recorded entries made by him in those records as to *544 the calculated date of delivery, the premature birth, as well as the weight of the child at birth and the treatment of both mother and child are the same as to his testimony by deposition. It is obvious that the Trial Judge accorded greater weight to Dr. Bradburn’s testimony and the hospital records than to that of Mrs. Gray who denied the pre-marital conception. We cannot disagree with those findings.
We are of the opinion that the preponderance of the evidence indicates that the Gray child was conceived prior to the marriage of plaintiff and Jimmy Ray Gray; consequently, Mrs. Gray had an unlawful connection since the birth of Tammy Mc-Conkey, who is the subject of these proceedings; and that said unlawful connection prohibits the establishment of paternal descent within the meaning of LSA-Civil Code Article 210.
The judgment of the Trial Court is affirmed. Appellant to pay all costs of appeal.
Affirmed.