(131 So. 841)

Succession of CORSEY.

Application of CARTER et al.

Opposition of CASSON.

No. 30937.

Dec. 1, 1930.

Rehearing Denied Jan. 5, 1931.

Gunter & McClung and Breazeale & Hughes, all of Natchitoches, for appellant.

James W. Jones, of Natchitoches, for appellee.

THOMPSON, J.

Isaac Corsey, a bachelor in his seventies, died on November 20, 1929, intestate, leaving neither descendants nor ascendants.

He left an estate consisting of movable and immovable property, notes and bank certificates of deposits, all inventoried at $11,537.31.

On December 3d following his death James Carter alleging himself to be a half-brother of Corsey and the closest blood relative applied to be appointed administrator. In this application it was alleged that the deceased left other heirs, the children of half-sisters.

On December 5th Isabelle Corsey, claiming to be the surviving widow of Isaac Corsey under and by virtue of a marriage of November 2, 1929, filed an opposition in which she alleged that James Carter was an illegitimate half-brother, and was not an heir of Isaac Corsey and was not a creditor; that Isaac Corsey left no lawful ascendants or descendants, nor lawful collaterals, and, being the surviving wife, she inherited all of the property left by the deceased. She alleged that the deceased owed no debts, and there was no

necessity for an administration, but, in the event the court should hold that an appointment was necessary, that she be appointed in preference to James Carter.

It having been satisfactorily shown that the opponent was never married to Isaac Corsey, her attorney, J. W. Jones, in open court, withdrew as her counsel.

On December 16, 1929, Ethel Casson, wife of June Casson, through J. W. Jones as counsel filed an opposition to the application of James Carter for administration. She alleged that James Carter was the illegitimate half-brother of Isaac Corsey, and was therefore no relation to nor heir of the said Corsey; that she was the legal heir, having been born during a cohabitation of the said Corsey with one Mary Jane Nelson, who resided together as man and wife for a period of several years; that she was a natural child and heir of the said Isaac Corsey, who raised her as his child, duly acknowledged her as such in conversation and declaration, and provided her with clothing and giving her such education as she received. And further that by registry of birth and duly authenticated acknowledgment the said Corsey had acknowledged her as his child.

She further alleged that no administration was necessary, and prayed that she be recognized as the sole heir and sent into possession of all of the property of the deceased, or, in the alternative, that she be appointed administratrix.

After a protracted litigation recorded in three volumes of over 600 pages, judgment was rendered in favor of the opponent Ethel Casson recognizing her as the acknowledged child and sole heir to the estate of Isaac Corsey.

The appeal is by the original applicant, James Carter.

In her petition Ethel Casson did not allege when, where, and before whom she had been acknowledged in writing by Isaac Corsey as his child, but merely alleged that, in addition to acknowledging her in conversation and declaration, etc., he had by "duly authenticated acknowledgment, acknowledged your petitioner as his child."

After repeated effort by a prayer for oyer and otherwise, a document was produced which purported to have been executed before J. W. Jones, notary public, and who was the attorney of the widow and later for Ethel Casson.

The instrument was dated October 26, 1929, a little less than one month before Corsey's death, and was signed by Corsey, making his mark with the accompanying statement that he was too nervous to write his name.

The document was attacked by the original applicant, James Carter, as not being genuine and not the act of Corsey, and no inconsiderable part of the mass of testimony was upon that issue.

The district judge held that the document was not genuine, and therefore predicated his judgment in favor of the opponent on other evidence of acknowledgment produced on the trial.

The counsel for appellee has answered the appeal, and asks that the ruling of the court on the written acknowledgment be reversed.

Inasmuch as the opponent was recognized as the sole heir and entitled to all of the property of the succession, it would serve no useful purpose to opponent or to the public to go into the mass of testimony with a view of reversing the ruling of the court on that phase of the evidence, unless we had reached a different conclusion from that of the district judge on the other manner of acknowledgment.

On the latter phase of the evidence the district judge had all of the witnesses on both sides of the issue before him, and, after hearing all of the evidence, he found that a preponderance of the evidence left no doubt in his mind that the opponent, Ethel Casson, was the acknowledged child of Isaac Corsey.

■ He says in his written opinion:

"However, the Court is of the opinion that there was no doubt of Ethel Casson being the child of the deceased, Isaac Corsey. There is no doubt that she was born at a time when there was no legal impediment to the marriage of Isaac Corsey and Mary Jane Nelson, both being single at the time of her birth. The Court is convinced that Isaac Corsey at all times acknowledged in conversation that Ethel Corsey was his child. These statements were made at various times to various parties during all of the days of the life of Ethel Casson."

We have read the evidence and agree in that conclusion.

The opponent went by the name of Ethel Corsey, and was generally known in the community by that name. She was enrolled in schools by that name, and was generally recognized by the people of her race as the child of Isaac Corsey.

■ Counsel for appellant contend, however, that the Code and jurisprudence make a broad distinction between acknowledgments by the father of his illegitimate child and such as made by the mother of that child.

Article 203 of the Civil Code declares:

"The acknowledgment of an illegitimate child shall be made by a declaration executed before a notary public, in presence of two witnesses, by the father and mother, or either of them, whenever it shall not have been made in the registering of the birth or baptism of such child."

Article 918 declares that natural children are called to the legal succession of their natural mother, when they have been duly acknowledged by her, if she has left no lawful children, or descendants, to the exclusion of father and mother and other ascendants or collaterals of lawful kindred.

Article 919 declares that natural children are called to the inheritance of their natural father, who has duly acknowledged them, when he has left no descendants nor ascendants, nor collateral relations, nor surviving wife, and to the exclusion only of the state.

It will be observed from the last two articles, referred to that natural children acknowledged by the mother take the inheritance to the exclusion of every other person except lawful children, even excluding the father and mother and other ascendants or collaterals of lawful kindred.

Whereas natural children acknowledged by the father inherit his estate when he has left no descendants, nor ascendants, nor collateral relations, nor surviving wife, and to the exclusion only of the state.

Article 209 of the Code declares that illegitimate children who have not been legally acknowledged may be allowed to prove their paternal descent: (1) By all kinds of private writings in which the father may have acknowledged the bastard as his child or may have called him so; (2) when the father, in public or in private, has acknowledged him as his child or has called him so in conversation or has caused him to be educated as such; (3) when the mother of the child was known as living in a state of concubinage with the father and resided as such with him in his home at the time when the child was conceived.

Article 203, relating to the form of acknowledgment of illegitimate children, makes no distinction between father and mother, and is applied alike to both.

In the Succession of Vance, 110 La. 760, 34 So. 767, 769, the court, in commenting on the various decisions and articles of the Code, said that the decision seemed to rest mainly upon articles 208 and 209 of the Code, both of which it was said refer to proof of paternal descent rather than to paternal acknowledgment.

"These are directions, it will be seen, for proving paternal descent, which is not the same thing as the acknowledgment by the father, and it is acknowledgment by the father which converts the illegitimate child, or bastard, into the 'natural' child, and from which spring the rights with which the natural child is invested by the law."

The court, however, did not refer to the fact which we have noted that the form of acknowledgment as defined in article 203 relates to the mother as well as to the father.

The court, however, in the Vance Case definitely expressed its adherence to the jurisprudence authorizing methods of acknowledgment of illegitimate children otherwise then as laid down in Civil Code, art. 203.

The cases referred to as holding such doctrine are Lange v. Richoux, 6 La. 560; Jobert v. Pitot, 4 La. Ann. 305; Succession of Hébert, 33 La. Ann. 1099; Briggs v. McLaughlin, 134 La. 133, 63 So. 851.

The latest case on the subject is Taylor v. Allen, 151 La. 82, 91 So. 635, 636, in which it was held:

"An illegitimate child may establish that she was acknowledged by her mother as her mother's child and thereby entitled to inherit, without proving the acknowledgment was made either by a notarial act or by baptism, as prescribed by Civ. Code, art. 203.

"The long-established rule followed in numerous cases that an illegitimate child, acknowledged by its parents in a manner not prescribed by the Code can inherit, constitutes stare decisis, which can only be remedied by act of the Legislature."

In that case it was said on page 110 of 151 La., 91 So. 635, that the question as to whether an illegitimate child may prove acknowledgment in a mode other than as prescribed by article 203, Civ. Code, was considered exhaustively by this court in the case of Minor v. Young, 148 La. 610, 87 So. 472, that a majority of the court were disposed at first to depart from the jurisprudence heretofore established on that point, and held that the modes prescribed in article 203 were exclusive, but that on application for a rehearing that view was changed and the conclusion reached that this long-established jurisprudence should be adhered to.

The rule is as applicable to the father as it is to the mother. The judgment appealed from is affirmed, at appellant's cost.

O'NIELL, C. J., dissents.