305 So.2d 469 (1974)
Robert McCONKEY and Bobbie McConkey Gray, wife of Ray Gray
v.
Robert PINTO and Clarence Pinto.
No. 54570.
Supreme Court of Louisiana.
December 2, 1974.
Rehearing Denied January 17, 1975.
*470 Gibson Tucker, Jr., Charles A. O'Niell, Jr., Tucker & Schonekas, New Orleans, for plaintiffs-applicants.
Philip L. Kitchen, Kitchen & Montagnet, New Orleans, for defendants-respondents.
SANDERS, Chief Justice.
In this suit, Bobbie McConkey, the natural mother, joined by her father, seeks to adjudge the defendant, Robert Pinto, the father of Tammy McConkey, so as to establish his responsibility for child support and natal expenses. Applying Article 210 of the Louisiana Civil Code, the Court of Appeal held that the natural mother's proof of paternity was insufficient, because she had "an unlawful connection" with her present husband shortly prior to their marriage. See La.App., 289 So.2d 540. On the plaintiff's application, we granted a writ to review the judgment La. App., 293 So.2d 166. We now reverse.
The record reflects that during 1966 and 1967 the natural mother dated the defendant regularly over a period of months. They were "going steady", with the mother dating no one else. During this time, they had frequent sexual relations. On one occasion the sexual intercourse took place in defendant's home. The natural mother became pregnant in May, 1967. Shortly thereafter, the plaintiff and defendant reported the pregnancy to plaintiff's sister. During the conversation, defendant stated that he could not afford to marry her then but wanted to wait until he finished college. Later, during the summer of 1967, plaintiff and defendant visited Sylvia Calegan, plaintiff's cousin, who had recently given birth to a child, to inquire about the medical and hospital costs of child delivery. As Mrs. Calegan testified, "They said she was pregnant and he had wanted to marry her. He wanted to know if he could afford it." After Mrs. Calegan showed defendant the medical bill, he said he could not afford it. A child, Tammy, was born on February 12, 1968.
On April 30, 1969, the natural mother married Jimmy Ray Gray. A son, Jimmy Ray Gray, Jr., was born of their marriage on November 29, 1969. In his deposition testimony, Dr. W. P. Bradburn stated that the child was premature. He opined, however, based upon approximated dates of the menses furnished by the mother, that the child was conceived between April 19 and April 26, 1969, or at least four days prior to marriage. The plaintiff denied sexual intercourse before the marriage.[1]
*471 Article 210 of the Louisiana Civil Code provides:
"The oath of the mother, supported by proof of the cohabitation of the reputed father with her, out of his house, is not sufficient to establish natural paternal descent, if the mother be known as a woman of dissolute manners, or as having had an unlawful connection with one or more men (other than the man whom she declares to be the father of the child) either before or since the birth of the child." [2]
Accepting the medical testimony that plaintiff's second child was conceived a few days prior to marriage, the Court of Appeal held that, under the above article, she was barred from establishing the paternity of her first child. Plaintiff first asserts that Article 210 is inapplicable, because one act of sexual intercourse occurred in defendant's house. As we view the Article, the single act is insufficient to remove the relationship from the broad class of cohabitation "out of the house." We do conclude, however, that Article 210 is inapplicable for other reasons advanced by plaintiff.
The medical testimony discloses only that plaintiff's child was conceived a few days prior to marriage.[3] Admittedly, the child was premature. Since the child was born more than 180 days after marriage, it is conclusively presumed to be legitimate. See LSA-C.C. Art. 186; Williams v. Williams, 230 La. 1, 87 So.2d 707 (1956). The conception of such a child a few days prior to marriage and over one year after the birth of the illegitimate child, in our opinion, does not constitute an unlawful connection, or commerce illicite, within the contemplation of Article 210. The purpose of this disqualifying provision is to prevent a dissolute mother from choosing as the father of her illegitimate child any one of several men with whom she had been intimate at the time of conception. Illicit relations after the birth of the child are relevant in that they support the premise that the mother was dissolute at the time of conception. The showing in the present case, relating to the birth of a legitimate child, is insufficient to produce a disqualification.
Moreover, the disqualifying provision is applicable only to proof of paternity by oath of the mother and cohabitation. It is inapplicable to proof under Article 209 of the Louisiana Civil Code. See Ogborn v. Bush, 255 So.2d 199, cert. den. 260 La. 412, 256 So.2d 293 (1972). Here, the defendant, accompanied by the natural mother, reported the pregnancy, secured the medical and hospital costs, and discussed marriage. In effect, the defendant acknowledged or called the child as his. In our opinion, the proof fulfills the requirements of paragraph 2 of Article 209, which provides:
"In the case where the proof of paternal descent is authorized by the preceding *472 article, the proof may be made in either of the following ways:
* * * * * *
(2) When the father, either in public or in private, has acknowledged him as his child, or has called him so in conversation, or has caused him to be educated as such;
* * * * * *
We conclude that defendant's paternity of the child has been established.
Natal expenses sought by the plaintiff, Robert McConkey, for the birth of the child in the sum of $516.00 have been adequately established. We have concluded, however that it is in the interest of justice to remand the case to the trial court to receive evidence on the needs of the child and current income of the father for the fixing of support. See LSA-C.C. P. Art. 2164.
For the reasons assigned, the judgment of the Court of Appeal is reversed and judgment is rendered in favor of the plaintiff, Bobbie McConkey, against the defendant, Robert Pinto, decreeing that he is the father of the child, Tammy McConkey, and is liable for the support of the child.
It is further ordered, adjudged, and decreed that there be judgment in favor of plaintiff, Robert McConkey, against the defendant, Robert Pinto, in the sum of five hundred sixteen ($516.00) dollars with legal interest thereon from judicial demand until paid.
It is further ordered, adjudged, and decreed that the case be remanded to the Civil District Court for the Parish of Orleans for the fixing of the support based upon additional evidence to be received.
It is further ordered, adjudged, and decreed that all costs of court be assessed against the defendant.
MARCUS, J., recused.
NOTES
[1] The only other evidence of pre-marital sexual relations of the mother was the testimony of a defense witness, with a police record, that he seduced her when she was about 13 years old. Neither the trial court nor Court of Appeal gave credence to this testimony. We find no error in this regard.
[2] The French text of Article 228 of the Louisiana Code of 1825, from which Article 210 was taken, reads as follows: "Le serment de la mere, áppuye de la preuve de la cohabitation du pére putatif avec elle, hors de la maison de celui-ci, ne suffit pas pour etablir la pateruité naturelle, si la mére est reconnue pour être de moeurs dissolues, ou pour avoir cn un commerce illicite avec un ou plusieurs hommes, autres que celui qu'elle accuse d'être pére de son enfant, avant on depuis la naissance de cet enfant." Italics ours).
[3] The medical opinion is based upon approximation of dates furnished by the mother. We would be disinclined to accept it except for the considerable weight that is normally accorded the trial judge's finding of fact. We have also been concerned with the physicianpatient privilege under LSA-R.S. 13:3734. We have concluded, however, that the privilege was waived when the patient failed to claim it in the trial court, or to make it the ground for an objection. Objection to the testimony on other grounds was insufficient to assert the privilege. 97 C.J.S. Witnesses § 302, pp. 842-843.