308 So.2d 892 (1974)
Succession of Arther "Pune" WASHINGTON et al.
No. 12403.
Court of Appeal of Louisiana, Second Circuit.
October 1, 1974.
On Rehearing February 25, 1975.
*893 Truett L. West, for appellants.
Wright, Dawkins, James & Hogg by Robert G. James, for appellee, Cornelus Washington Taylor.
Before AYRES, BOLIN and PRICE, JJ.
PRICE, Judge.
Cornelus Washington Taylor brought this action seeking to set aside the judgment of possession rendered on April 20, 1973, in the Successions of Arther and Roxaney Washington, and to have herself recognized as the legitimated child of the decedents and as such the owner of an undivided one-half of all property belonging to their estates.
The affidavits of heirship filed to support the ex parte judgment of possession are alleged to be incorrect in declaring the sole and only child born of the marriage of the decedents to be Ola V. Washington McMurray (also deceased), whose heirs were declared entitled to the ownership of all of their grandparents' estate. These children of Ola V. Washington, who were named as defendants in this action, filed an answer denying plaintiff was the legitimated child of Arther and Roxaney Washington, and alleging plaintiff was born to Roxaney Ervin prior to her marriage to Arther Washington as an illegitimate child of an illicit relationship with one Julius Johnson.
*894 Plaintiff filed a peremptory exception pleading estoppel on the allegation that defendant's mother, Ola V. Washington McMurray, had joined with plaintiff in prior judicial proceedings which recited they were both the children of Arther and Roxaney Washington and had executed affidavits to that effect. This exception was referred to the merits and after trial of this matter the district court rendered judgment recognizing plaintiff as the legitimated child of the decedents and entitled to the ownership of an undivided one-half of the properties involved.
Defendants have appealed, assigning as error the finding of the trial judge that plaintiff had offered sufficient proof she was the child of Arther Washington.
We find the evidence to support the conclusions reached by the trial judge in his written reasons for judgment.
The record shows plaintiff was born in the year 1900 to Roxaney Ervin, who subsequently married Arther Washington in 1903. Prior to its amendment in 1944, La.C.C. art. 198 provides:
"Children born out of marriage, except those who are born from an incestuous or adulterous connection, may be legitimated by the subsequent marriage of their father and mother, whenever the latter have legally acknowledged them for their children, either before their marriage by an act passed before a notary and two witnesses, or by their contract of marriage itself."
After amendment by Act 50 of 1944, this article provides:
"Children born out of marriage, except those who are born from an incestuous connection, are legitimated by the subsequent marriage of their father and mother, whenever the latter have formally or informally acknowledged them for their children, either before or after marriage."
The amended act affects all persons who come within the purview of the statute, even though their parents' marriage took place prior to the effective date of the amending Act. Henry v. Jean, 238 La. 314, 115 So.2d 363 (1959).
The plaintiff whose birth was prior to the marriage of her mother to Arther Washington must bear the burden of proving the facts which would entitle her to the status of a legitimated child under the above authorities.
The sole issue on this appeal is whether the proof offered by plaintiff satisfied this burden of proving her filiation. The trial court found it unnecessary to consider the plea of estoppel, and in view of the conclusions reached by us on the merits, further consideration of this exception would be inappropriate.
Plaintiff has introduced certain documents into the record in support of her position. The 1910 census record lists her as being born in 1900 as the child of Arther Washington. An act of sale transferring certain property that had formed part of the community between Arther and Roxaney Washington shows Arther joined in its execution with plaintiff and defendant's mother, Ola V. Washington McMurray, as the "sole and only heirs of Roxanner Washington." Had plaintiff not been assumed to be the legitimate child of her mother, it would not have been necessary for her to have joined in this sale. There is also a right-of-way agreement in favor of Southwest Gas Company in which Arther Washington recognized plaintiff as his child. In the Succession of Ellis McClain, sister of Roxaney Washington, an affidavit was executed by defendant's mother, along with plaintiff, in which these parties asserted they were both the legitimate children of Roxaney Washington and entitled *895 to represent their mother in the decedent's estate.
Testimony was adduced which clearly established Arther Washington had reared plaintiff in his home and had always treated her as his child and defendants concede this fact to be true.
Defendants rely solely on the testimony of two elderly persons who testified to stories and rumors that plaintiff was the daughter of one Julius Johnson whom plaintiff's mother had run off with as a teen-age girl.
Proof or disproof of paternity is always difficult. Here plaintiff's mother, reputed father and sister (defendant's mother) are all dead. Other witnesses who knew the parties are few and of advanced ages.
We believe plaintiff has established by competent evidence that she was the child of Arther Washington and that defendants' evidence is insufficient to refute the plaintiff's proof.
For the foregoing reasons we affirm the judgment appealed from annulling the judgment of possession in the Succession of Arther and Roxaney Washington and recognizing plaintiff as a legitimated child of the marriage of decedents and as such entitled to the ownership of an undivided one-half interest in all property belonging to their estates, and particularly to the following described immovable property situated in Lincoln Parish, Louisiana:
West One-half of the Northeast Quarter (W/2 of NE/4) of Section Fifteen (15), Township Nineteen (19) North, Range Two (2) West, containing eighty (80) acres, more or less.
Costs of this appeal are to be paid by appellant.
Before AYRES, BOLIN, PRICE, HALL and DENNIS, JJ.

ON REHEARING
DENNIS, Judge.
A rehearing was granted to reconsider the holding in our original opinion that Cornelus Washington Taylor was the legitimated child of Arther Washington and Roxaney Ervin Washington. The defendants contend that we ignored or overlooked the testimony of several witnesses; that this testimony established that the plaintiff's deceased mother, Roxaney Ervin Washington, had an unlawful connection with a man other than Arther Washington either before or after the birth of the plaintiff; that because of these facts Civil Code Article 210 required plaintiff to prove her paternity by more than a preponderance of the evidence; and that plaintiff failed to meet this onerous standard of proof. After reviewing the evidence again and considering defendants' arguments anew, we conclude that their contentions are without merit.
Crucial to our determination is the proper construction of Civil Code Article 210, which provides:
"The oath of the mother, supported by proof of the cohabitation of the reputed father with her, out of his house, is not sufficient to establish natural paternal descent, if the mother be known as a woman of dissolute manners, or as having had an unlawful connection with one or more men (other than the man whom she declares to be the father of the child) either before or since the birth of the child."
Defendants argue that the article imposes a more stringent standard of proof in paternity cases if the mother has had an illicit relation with a man other than the alleged father. But an unstrained reading indicates that it is only a statutory restriction of the weight to be given by the courts to a certain class of evidence. In *896 essence, it prohibits a judicial determination of paternity based solely on proof of cohabitation and the testimony of the mother, if she has been promiscuous. It is not a punitive measure designed to make proof of paternal descent generally more difficult for indiscriminate mothers and their children by increasing the burden of proof beyond a preponderance of the evidence. Instead it merely displays a legislative distrust of the oath-plus-cohabitation evidence by declaring that conclusive weight cannot be given to it standing alone. Cf. McConkey v. Pinto, 305 So.2d 469 (La.Sup.Ct.1975); Ogborn v. Bush, 255 So.2d 199 (La.App., 4th Cir. 1972).
In fact, it is not clear that Article 198 of the Civil Code, under which this action was brought, actually requires that plaintiff prove her paternal descent. It provides:
"Children born out of marriage, except those who are born from an incestuous connection, are legitimated by the subsequent marriage of their father and mother, whenever the latter have formally or informally acknowledged them for their children, either before or after the marriage."
Defendants concede that Arther and Roxaney Washington acknowledged the plaintiff for their child. To require the plaintiff, after living almost 75 years as their acknowledged child, to assume even the ordinary burden in proving her parentage seems unjust. Indeed, the Civil Code plainly provides that the methods of proving paternity are available to illegitimate children "who have not been legally acknowledged." C.C. Arts. 208, 209. Despite what may be authority to the contrary, see Planiol, Vol. 1, No. 1564A, Article 198 is susceptible to the interpretation that acknowledgment by a legally married couple of a child born prior to their wedding, without more, creates a conclusive, or at lease a rebuttable, presumption that they are the child's natural parents.
It is unnecessary, however, for us to reach the legal question of whether Article 198 requires proof of parentage as well as acknowledgment by the parents. Plaintiff has proved that she was the child of Arther and Roxaney Washington by a preponderance of evidence and by methods authorized by the Civil Code. The pertinent articles are as follows:
"Art. 208. Illegitimate children, who have not been legally acknowledged, may be allowed to prove their paternal descent."
"Art. 209. In the case where the proof of paternal descent is authorized by the preceding article, the proof may be made in either of the following ways:
1. By all kinds of private writings, in which the father may have acknowledged the bastard as his child, or may have called him so;
2. When the father, either in public or in private, has acknowledged him as his child, or has called him so in conversation, or has caused him to be educated as such;
3. When the mother of the child was known as living in a state of concubinage with the father, and resided as such in his house at the time when the child was conceived."
As mentioned in our original opinion, plaintiff established that Arther Washington acknowledged her as his child publicly and privately, in writings, and in conversations. We failed to state that he also attended church with her and caused her to be educated by sending her to school in Homer and Ruston. On rehearing, we find additional significance in the undisputed evidence related to the tract of land which is the only asset belonging to the successions of Arther and Roxaney Washington. Arther Washington signed a right *897 of way agreement in which he acknowledged the plaintiff as a co-owner of this property. He also allowed her to receive ¼ of the proceeds from the right of way agreement as her share. Furthermore, he built a house on the property for her and her husband, in which she was still living at the time of the trial. For many years the plaintiff and her husband farmed and received revenues from part of the property. These facts, together with those referred to in our original opinion, many of which were in existence continuously or continually over a period of almost 75 years, present a very strong case that plaintiff was the child of Arther Washington.
Defendants do not dispute any of these facts, and admit that Arther Washington reared, supported and in every way held out the plaintiff as his child. Instead, they seek to defeat her cause by showing that at the time of her conception the plaintiff's mother was living with a man other than Arther Washington. Defendants rely upon the testimony of four witnesses, and in particular that of Lizzie Thomas, for proof of this fact.
Lizzie Thomas was a resident of the same community as the Washington family and stated that she was 22 or 23 years old when the plaintiff was born. Therefore, Mrs. Thomas was 96 or 97 years old at the time of the trial and was asked to recall events that had occurred approximately 74 years earlier. She testified that Julius Johnson, rather than Arther Washington, was plaintiff's father, but when asked how she knew this, she answered, "Because they had a fight." She then described an altercation between Roxaney Washington and the jealous wife of Julius Johnson which she said took place after the birth of the plaintiff. She later testified that when plaintiff was born Roxaney was living with Julius Johnson in a house near where Mrs. Thomas resided. However, she was never asked to elaborate on how she knew this, and her testimony in this regard actually amounted to a single conclusion of fact. She also related a story about Roxaney and Julius "running off down to the swamp country" but admitted she had just heard about it and had not seen it happen. Thus the part of Mrs. Thomas' testimony which was not hearsay was a conclusion of fact related to events which occurred at the time of plaintiff's birth, rather than at the time of her conception, and therefore was of marginal relevance to defendants' attack upon plaintiff's paternity.
Homer Jenkins was 84 years old and a resident of Monroe at the time of the trial.
He testified that when he was a young man he lived near the Washington family. He recalled that on one occasion Arther Washington had told him that Julius Johnson was the plaintiff's father, but he could not remember when this occurred and was not asked for any of the circumstances under which the statement was made. He further stated that when he first became acquainted with the plaintiff she went by the name of Cornelus Johnson and the nickname of "Deb". In response to a series of leading questions he agreed that most people in the community believed Julius Johnson was her father. Thus his testimony consisted of his recollection of statements he had heard either after plaintiff's birth or at an undetermined time.
Rufus McMurray, husband of the deceased Ola V. Washington McMurray, and father of the defendant, Arthur McMurray, had lived in the same community as the Washington family for 74 years. He stated that plaintiff used the surname Ervin when he first met her. He further testified that Ola was 13 and plaintiff 10 when he married into the family. All other evidence of record shows that plaintiff, rather than being younger, was at least three years older than her sister. He stated that Roxaney Washington told him at some time after his marriage that Julius Johnson was plaintiff's father, but *898 was not asked to specify when, where or under what circumstances the remark was uttered. He claimed everybody in the settlement knew who the father of Cornelus Taylor was, but was not asked to elaborate on this opinion.
Arthur McMurray, son of Rufus and Ola V. Washington McMurray, stated that his deceased mother told him that she and the plaintiff were half sisters, but that he had never discussed the circumstances of the plaintiff's birth with others in the community.
Despite the testimony of the defendants' witnesses, the evidence in the case preponderates in favor of the conclusion that it is more probable than not that the plaintiff was the child of Arther and Roxaney Washington. We incorrectly stated in our original opinion that defendants relied solely on "stories and rumors" about plaintiff's mother and Julius Johnson. Defendants' evidence consists mostly of this, but they did present what we presume was the first-hand observation of Lizzie Thomas that Roxaney and Julius were living together at the time of the plaintiff's birth. Nevertheless, even if accepted at face value, this evidence is not particularly probative in showing that coitus occurred between them at the time the plaintiff was conceived. Furthermore, the trial judge rejected the testimony of the defendants' witnesses, and the well settled principle requiring us to give his assessment of the witnesses' reliability great weight is particularly appropriate in the instant case due to the advanced ages of the few disinterested witnesses and the remoteness of the events they were asked to recall. We believe the evaluation of credibility and inferences of fact made by the trial court were entirely reasonable and for this reason should not be disturbed.
It is therefore ordered and adjudged that the decree heretofore rendered in this case be adhered to.