330 So.2d 396 (1976)
Eloise WILLIAMS, Plaintiff-Appellant,
v.
Curtis VIDRINE, Defendant-Appellee.
No. 5394.
Court of Appeal of Louisiana, Third Circuit.
April 14, 1976.
Preston N. Aucoin, Ville Platte, for plaintiff-appellant.
J. Wendel Fusilier, Ville Platte, for defendant-appellee.
Before HOOD, GUIDRY and PETERS, JJ.
GUIDRY, Judge.
This action was brought by Eloise Williams, the natural mother of Pakavi Jawayne Williams[1], seeking to adjudge the defendant, Curtis Vidrine, father of this child, so as to establish his responsibility for child support. The plaintiff appeals the trial court's dismissal of her suit.
At the outset we note that the record in this matter reflects that the defendant filed an exception of "No cause and/or No Right of Action" which was not ruled *397 on by the trial judge. We consider the exception to have been abandoned. See Quinette v. Delhommer, 247 La. 1121, 176 So. 2d 399 (1965); Oil Purchasers, Inc. v. Kuehling, 321 So.2d 17 (La.App., 3rd Cir., 1975); Ford Motor Credit Company v. Soileau, 323 So.2d 221 (La.App., 3rd Cir., 1975).
On the merits the trial court in applying Articles 209 and 210 of the Revised Civil Code found that the plaintiff had not offered sufficient proof that Curtis Vidrine was the natural father of her child, Pakavi Jawayne. We find the evidence to support the conclusion reached by the trial judge and affirm his dismissal of the plaintiff's suit.
Article 208 of the Revised Civil Code provides that an illegitimate child may prove his paternal descent. Article 209 of the Revised Civil Code which sets forth the method of proving paternal descent provides as follows:
"In the case where the proof of paternal descent is authorized by the preceding article, the proof may be made in either of the following ways:
1. By all kinds of private writings, in which the father may have acknowledged the bastard as his child, or may have called him so;
2. When the father, either in public or in private, has acknowledged him as his child, or has called him so in conversation, or has caused him to be educated as such;
3. When the mother of the child was known as living in a state of concubinage with the father, and resided as such in his house at the time when the child was conceived."
There is no evidence in the record to support a claim that the defendant acknowledged the child through private writings, educated him as his, or that the plaintiff was living in a state of concubinage with the defendant.
Plaintiff's claim of filiation under R.C.C. Article 209 is based on subsection 2, it being alleged that defendant verbally acknowledged that Pakavi Jawayne was his son. In support of this allegation plaintiff relies on her testimony and that of her mother, and one, Elmo Washington, a close friend of the family. The testimony of these three is to the effect that the defendant acknowledged Pakavi Jawayne as his son in conversation and on one occasion the child visited at the defendant's mother's home. Defendant only admitted to having told the plaintiff on a couple of occasions that Pakavi Jawayne was his child and did so only to satisfy the plaintiff and to induce her to continue their clandestine and illicit relationship. The trial court found that the evidence fell short of the provisions of R.C.C. Article 209, sub-paragraph 2 and consequently that plaintiff failed to meet her burden of proof. The trial court, obviously unimpressed with the plaintiff's witnesses, stated:
"Proof in such cases should be such that paternity should not be based on conjecture, but rather that verbal acknowledgments in public or in private, or in conversations, are sufficiently frequent that there can be little doubt that the alleged father truly believes himself to be the father of the child."
We are in accord with the trial court's decision that there was no suitable acknowledgment of the child under R.C.C. Article 209(2).
Plaintiff next sought to establish filiation under the provisions of R.C.C. Article 210 which provides as follows:
"The oath of the mother, supported by proof of the cohabitation of the reputed father with her, out of his house, is not sufficient to establish natural paternal descent, if the mother be known as a woman of dissolute manners, or as having an unlawful connection with one or more men (other than the man whom she declares to be the father of the child) either before or since the birth of the child."
The trial court determined that although the evidence reflected that defendant had *398 cohabited with plaintiff, outside of his house, during the period of time when conception likely occurred such evidence standing alone was insufficient to establish filiation because the evidence likewise established plaintiff to be a woman of dissolute manners. In speaking to this issue the trial court stated:
"The evidence shows without dispute that plaintiff and the defendant were having sexual relations intermittenly during the period of time at which conception likely occurred. The evidence further shows, by plaintiff's own testimony, that she is a highly promiscuous female. She testified that while she was in the Army for a short period immediately prior to her relationship with the defendant, she had a lover or lovers at four out of five duty stations at which she served, and implied the only reason she did not have a lover at the fifth duty station was because she was only there for a period of one week. The plaintiff further testified that after her baby was born that she began having illicit relationship with one Raymond Rueben, approximately six weeks after the birth of the child, and that she is still having an illicit relationship with the said Reuben.
This Court therefore considers the plaintiff to be a dissolute woman under the terms of Article 210 of the Louisiana Civil Code. Admittedly she has had sexual relationships with seven different men, on numerous occasions, over a period of approximately two or three years. The Court would not rule out the probability that she was involved sexually with many more men. . ."
We are in accord with the trial court's finding that the plaintiff was of dissolute manner and consequently that oath and evidence of cohabitation under the circumstances of this case was not sufficient to establish that defendant is the natural father of Pakavi Jawayne. Succession of Washington, 308 So.2d 892 (La.App., 2nd Cir., 1974); McConkey v. Pinto, 305 So.2d 469 (S.Ct. La.1974).
Finally, plaintiff through counsel suggested that the trial judge erred when he refused during the admission of rebuttal evidence to permit a recall of the defendant under cross-examination. Accordingly plaintiff urges that this case should be remanded so as to permit further examination of the defendant under cross.
Article 1634 of the Code of Civil Procedure states in pertinent part:
"The Court may permit the recall and further cross-examination of the party or his representative as often as it deems in the interest of justice."
We are of the opinion that the trial judge did not abuse his discretion in not allowing the recall of the defendant. Harrelson v. New Orleans Roosevelt Corporation, 184 La. 551, 166 So. 671 (1936).
For the foregoing reasons the judgment appealed from is affirmed, all costs of these proceedings being borne by the plaintiff-appellant.
AFFIRMED.
NOTES
[1] Defendant Exhibit 1 is the Certificate of Live Birth issued by the State at the time of Pakavi Jawayne's birth. Examination of the Certificate reveals that the child's last name was designated as Williams. No father's name was given. Plaintiff Exhibit 1 is a Baptismal Certificate listing the child in the family name Vidrine and Curtis Vidrine as the child's father. The record clearly shows that Curtis Vidrine was not at the baptism nor was he aware of or agreed to the use of his name.