346 So.2d 1345 (1977)
SUCCESSION of Calis MATTE.
No. 5853.
Court of Appeal of Louisiana, Third Circuit.
May 13, 1977.
Rehearing Denied June 24, 1977.
*1346 Privat  Regan by Kenneth O. Privat, Crowley, for plaintiff-appellant.
Guillory, McGee  Mayeux by Robert K. Guillory, Eunice, for defendant-appellee.
Before CULPEPPER, WATSON and STOKER, JJ.
CULPEPPER, Judge.
The present case, Succession of Calis Matte, is a companion case to the Succession of Zoe Thibodeaux Matte. The two cases were consolidated for trial and appeal. A separate decision is being rendered by us this date in Succession of Matte, 346 So.2d 1351.
The appellant, Mildred Marie Matte Arsement (Mildred), alleges she is the legitimate daughter of Calis Matte and is, therefore, entitled to a forced portion of his estate and a portion of the estate of his mother, Zoe T. Matte. In the alternative, Mildred alleges she is either the legitimated or acknowledged child of Calis Matte. Opposing Mildred in her claims are the brothers of Calis Matte, Orest and Leonce Matte. The trial court rendered judgment rejecting all of Mildred's demands on the grounds that she is neither the legitimate, legitimated nor acknowledged daughter of Calis Matte. Mildred appealed.
The substantial issues are: (1) Is Mildred presumed to be the legitimate child of Calis Matte? (2) Is Mildred the legitimated child of Calis Matte? (3) Is Mildred the acknowledged child of Calis Matte?

THE GENERAL FACTS
Calis Matte died intestate on March 3, 1962 survived by his mother, Zoe Thibodeaux Matte, and by his two brothers, Orest and Leonce. A judgment of possession rendered on March 12, 1962 recognized Calis Matte's mother, Zoe Thibodeaux Matte, and his two brothers as his sole heirs.
Zoe Thibodeaux Matte, Calis Matte's mother, died on October 9, 1975. Mrs. Matte bequeathed all of her property to her two surviving sons, Orest and Leonce. A judgment of possession rendered on October 23, 1975 recognized Orest and Leonce as the heirs of Mrs. Zoe T. Matte and sent them into possession of her estate, which consists principally of about 45 acres of land valued at less than $15,000.
It was not until after the death of Zoe T. Matte that Mildred filed the present suits claiming portions of the estates of Calis Matte and Zoe T. Matte on the grounds that she is the legitimate daughter of Calis Matte.
The essential facts of Mildred's birth and upbringing are undisputed. The record shows that Mildred was born on October 26, 1935. Mildred's mother, Eula Bellard, was unmarried when Mildred was born. Eleven months after Mildred was born, her mother began living with a man named Angelle. From the time of her birth and through her years in school, Mildred was known to everyone as "Mildred Angelle". Mildred's younger brother also had the surname, "Angelle". There is no birth certificate for Mildred in the record.
After living with Angelle for an indeterminate time, Eula Bellard married Alus Lavergne in 1940. In 1949, while still legally married to Alus Lavergne, Eula Bellard and Mildred began living with Calis Matte in his house. Eula lived with Calis Matte from 1949 until his death in 1962. Mildred lived with her mother and Calis Matte until *1347 she was married in 1953. Prior to her marriage in May of 1953, appellant continued to use the name "Mildred Angelle".
Mildred admitted in testimony at trial that her parents were never married, nor to her knowledge did they consider themselves to be married. The record shows that Eula Bellard and Calis Matte simply lived in open concubinage and did not give the impression of being man and wife.
In a deposition introduced into evidence at trial, Mildred was asked if her name had ever been changed from Angelle to Matte. She replied: "Just for my marriage license.. . . From then on I used Matte." Mildred testified that her mother did not tell her Calis was her father until she applied for her marriage license in 1953. Eula Bellard, Mildred's mother, did not testify at trial.
Mildred testified that she had a warm and friendly relationship with Calis Matte. She considered him to be her father after her mother told her he was. She testified that Calis Matte told various people in the rural area where they lived that Mildred was his daughter. One witness, a store keeper, testified that Calis Matte called Mildred his daughter in the store. Another witness, who was only 12 years old when Mildred was born in 1935, testified that she remembered Calis visiting Mildred the day after her birth and calling her his daughter. Mildred further testified that Calis considered her children to be his grandchildren. Local newspaper announcements of the births of Mildred's children identified Calis Matte as Mildred's father. Mildred admitted, however, that she could never remember Calis saying anything in the presence of his own family to the effect that she was his daughter. This fact is significant because the other members of Calis Matte's family lived in very close proximity to him on the same tract of land where his house was situated during the time Mildred and her mother lived with Calis Matte.
Mildred introduced into evidence two documents in an effort to prove she was the legitimate, legitimated or acknowledged daughter of Calis Matte. The first is a photo copy (not an original), of a "Certificate of Baptism" purportedly issued by the St. Francis Regis Church or Arnaudville, Louisiana. This certificate, introduced into evidence without objection at trial, states: "That Mildred Marie Matte, child of Calixte Matt and Eula Bellard, born in Arnaudville, Louisiana on the 26th day of October, 1935 was baptized on the 30th day of November, 1935." The document is signed by the church pastor and is dated May 3, 1953, one day before Mildred applied for her marriage license. Apparently, Mildred applied for the Certificate of Baptism in order to prove she was old enough to get married, since she did not have a birth certificate.
The second document Mildred introduced is an application for a marriage license. This document is dated May 4, 1953. It identifies Calis Matte as Mildred's father. Calis Matte signed the application in the capacity of a witness. There is nothing in the application to indicate an intent on the part of Calis Matte to legitimate his daughter. To the contrary, the record indicates that Calis Matte probably signed the marriage license application in an effort to expedite Mildred's marriage.
Finally, Mildred introduced hospital bills sent to Calis Matte bearing this notation: "For wife, Eula." As we noted earlier, however, Mildred admitted her alleged parents were never married.
Calis Matte did not adopt Mildred nor did he leave a will naming her as a beneficiary.

PRESUMPTION OF LEGITIMACY
Mildred argues the trial court erred in not giving her the benefit of a presumption of legitimacy. Specifically, Mildred argues the collateral heirs of Calis Matte have the burden of proving she is not the legitimate daughter of Calis Matte. We do not agree.
The presumption of legitimacy is one of the strongest presumptions in our law. However, a mere reading of LSA-C.C. Articles 184-192, which provide the rules for determining who are legitimate children, shows that a prerequisite of the presumption *1348 of legitimacy is evidence of a marriage between the child's parents or evidence of facts giving rise to a presumption of marriage. In Succession of Jacobsen, 182 La. 151, 161 So. 185 (1935) Justice Fournet stated:
"There is nothing in the record to show that the father of decedent and his mother ever lived together as man and wife or even held themselves out as husband and wife. In the absence of such evidence, there cannot be a presumption of a marriage which is necessary to raise the presumption of the legitimacy of the decedent." (Emphasis added)
Admittedly, in Succession of Jacobsen it was not the child who asserted his legitimacy. The reasoning of the Jacobsen case, however, is applicable to all cases involving the presumption of legitimacy.
In Boykin v. Jenkins, 174 La. 335, 140 So. 495, 497 (1932), the Supreme Court further explained that evidence of marriage or evidence of acts giving rise to a presumption of marriage is necessary to raise the presumption of legitimacy. The court held:
"But proof of the celebration of a marriage between parents is not indispensable to the children's rights to inherit from them, for such proof cannot always be made. In the absence of such proof, however, they must show that they were born of parents who were so living together and so conducting themselves toward each other in society, holding themselves out as man and wife, as to raise the presumption that they were married. When the facts shown are such as to raise the presumption of marriage, the further presumption that the children are legitimate necessarily follows." 140 So. at 497.
Perhaps the most liberal application of the presumption of legitimacy is found in the case of In Re Gray's Succession, 201 La. 121, 9 So.2d 481 (1942). Even in that case, however, the court grounded application of the presumption of legitimacy on facts giving rise to a presumption of marriage. Nothing in Gray's Succession, conflicts with the above quoted rules from Succession of Jacobsen, and Boykin v. Jenkins.
Mildred relies heavily on the majority opinion in Succession of Fuselier, 325 So.2d 296 (La.App. 3rd Cir. 1976) as authority for her assertion that the trial court erred in not applying the presumption of legitimacy. Fuselier is readily distinguishable from the case now before us. In Fuselier, the child introduced evidence of a putative marriage between her father and her mother. The majority relied on this evidence as showing that there was either a marriage or a presumption of a marriage. In the present case, appellant admits her alleged parents were never married, and that they did not even begin living together until she was a teenager. Therefore, our holding in Fuselier is inapplicable to the present case.
We realize the strong presumption of legitimacy is grounded on basic moral principles and designed to protect the right of legitimate children to inherit from their parents. Nevertheless, the law is clear that the presumption does not arise until the alleged legitimate child has proved a marriage, either legal or putative, or has proved facts creating a presumption of marriage. In cases such as the present one, where there is no evidence of a marriage and no evidence even showing a presumption of marriage of the parents of the child, the child is not entitled to the presumption of legitimacy.

LEGITIMATION
Next, we address the issue of whether Calis Matte "legitimated" Mildred under the terms of LSA-C.C. Articles 198-201, which compose the section of the Civil Code entitled "Of Legitimation".
Mildred does not argue she was legitimated by subsequent marriage of her parents. LSA-C.C. Articles 198-199. She argues, however, she was legitimated by virtue of the certificate of baptism naming Calis Matte as her father and by Calis Matte signing her marriage license application as a witness.
The applicable provision of the Civil Code is Article 200. It provides in pertinent part: "A natural father or mother *1349 shall have the power to legitimate his or her natural children by an act passed before a notary and two witnesses, declaring that it is the intention of the parent making the declaration to legitimate such child or children." Neither the certificate of baptism nor the marriage license application evidence the requisite intent to legitimate Mildred. Furthermore, neither document is in the form prescribed for acts of legitimation.

ACKNOWLEDGMENT
Having concluded Mildred is not the legitimate or legitimated daughter of Calis Matte, we next address her contention that she is the acknowledged daughter of Calis Matte.
Under the terms of Article 919 of our Civil Code, the duly acknowledged natural children of their natural father are called to his succession only to the exclusion of the state. Thus, even if Mildred were the acknowledged illegitimate daughter of Calis Matte, his collateral relations, Orest and Leonce Matte, would inherit the estate to the exclusion of Mildred. Mildred's purpose, however, in arguing she is the acknowledged illegitimate daughter of Calis Matte is to establish the requisite standing for a constitutional attack on Articles 918 and 919 of the Civil Code on the grounds that the two articles work an unconstitutional discrimination between the acknowledged illegitimate children of the mother and those of the father. U.S.Constitution, 14th Amendment; La.Constitution, 1974, Article 1, Section 3. For the reasons which follow, we conclude that Mildred failed in her burden [see Succession of Washington, 308 So.2d 892 (La.App. 2d Cir. 1974)] of proving she is the child of Calis Matte. Failing in this burden, Mildred has no standing to challenge the constitutionality of our laws of intestate succession in general and the above mentioned articles in particular. Furthermore, any general attacks on our intestate succession laws on the grounds that they discriminate between legitimate and illegitimate children are foreclosed by the decision of the U.S. Supreme Court in Labine v. Vincent, 401 U.S. 532, 91 S.Ct. 1017, 28 L.Ed.2d 288.
Illegitimate children may be acknowledged by their parents either formally or informally. The procedure for formal acknowledgment is stated in Civil Code Article 203:
"The acknowledgment of an illegitimate child shall be made by a declaration executed before a Notary Public, in presence of two witnesses, by the father and mother or either of them, whenever it shall not have been made in registering of the birth or baptism of such child."
We are not concerned with formal acknowledgment in the present case, because there is no evidence that Calis Matte acknowledged Mildred as his child by notarial act or by witnessing or signing the certificate of baptism naming Mildred as his child. See State v. De Lavallade, 215 La. 123, 39 So.2d 845 (1949); Williams v. Vidrine, 330 So.2d 396 (La.App. 3rd Cir. 1976), footnote one.
Informal acknowledgment is not specifically defined or authorized by the Louisiana Civil Code, but is instead a product of our jurisprudence. Taylor v. Allen, 151 La. 82, 91 So. 635 (1921); State v. De Lavallade, supra; Keen, Irregular Successions in Louisiana, 7 Loy.L.Rev. 94, 102-105 (1954); Oppenheim, Acknowledgment and Legitimation in Louisiana, 19 Tul.L.Rev. 326 (1945). Proof of informal acknowledgment is made by proving paternal descent. Succession of Corsey, 171 La. 663, 131 So. 841 (1930); Comment, What Effect Has Proof of Maternity, 6 La.Law Review, 268 (1945); Oppenheim, Acknowledgment and Legitimation in Louisiana, supra. Often, the courts turn to Article 209 as a standard for determining whether there has been an informal acknowledgment by proof of paternal filiation. See, for example, Bourriaque v. Charles, 107 La. 217, 31 So. 757 (1920); Succession of Corsey, supra; Succession of Washington, on rehearing, supra. Article 209 provides:
"In the case where the proof of paternal descent is authorized by the preceding article, the proof may be made in either *1350 of the following ways: (1) By all kinds of private writings in which the father may have acknowledged the bastard as his child, or may have called him so; (2) when the father, either in public or in private, has acknowledged him as his child, or has called him so in conversation, or has caused him to be educated as such; (3) when the mother of the child was known as living in a state of concubinage with the father, and resided as such in his house at the time when the child was conceived."
A review of the jurisprudence interpreting this article, in both informal acknowledgment cases and in cases involving claims by illegitimate children for alimony from their fathers, reveals that the courts have generally been reluctant to find an acknowledgment (or proof of paternity) unless the father continuously and unequivocally recognizes the child as his own. In several cases where the court found an informal acknowledgment or sufficient proof of paternity, the court stressed the importance of (1) continuous acknowledgment, or (2) "habitual acknowledgment", and (3) proof that the alleged father was generally reputed to be the father of the child. See respectively Succession of Corsey, supra; Gibney v. Fitzsimmons, 5 La.Ann. 250 (1850), and Succession of Vance, 110 La. 760, 34 So. 767 (1903). In a note entitled Family LawIllegitimate ChildrenProof of Paternity, 15 La.Law Review 218 (1954), the author lists from the jurisprudence the following acts which do not constitute admissions of paternity under Civil Code Article 209:
"Referring to the child as his son more than 50 years before the trial in the presence of witnesses who were then young boys unable to tell whether the remarks were made `in an affectionately playful manner or with serious intentor perhaps in the nature of braggadocio;' [Succession of Wallace, 219 La. 297, 52 So.2d 858]; and calling the children his own when no one was present but the children. [Badillo v. Tio, 6 La.Ann. 129 (1951)]. In the latter case the court in a dictum implied that only oral admissions of paternity made in `habitual conversations with others' (id. at 131) could be used to prove paternity under Article 209."
Perhaps the most recent judicial interpretation of sufficiency of evidence under Article 209 came in our decision in Williams v. Vidrine, 330 So.2d 396 (La.App. 3rd Cir. 1976). There, we quoted with approval the following guidelines from the written reasons of the trial judge:
"Proof in such cases should be such that paternity should not be based on conjecture, but rather than verbal acknowledgments in public or private, or in conversations, are sufficiently frequent that there can be little doubt that the alleged father truly believes himself to be the father of the child."
There have, of course, been cases where the courts have found an informal acknowledgment or sufficient proof of paternity on relatively weak evidence. See Rousseau v. Bartell, 224 La. 601, 70 So.2d 394 (1954); Ogborn v. Bush, 255 So.2d 199 (La.App. 4th Cir. 1971), writ refused.
Obviously, the determination of whether or not there has been an informal acknowledgment or sufficient proof of descent from the alleged parent is a factual determination which must be made by reference to the record as a whole. Justice Dennis, then a judge in the Second Circuit Court of Appeal recognized this principal in Succession of Washington, supra, on rehearing. Thus, if there is a reasonable factual basis for the trial judge's conclusion regarding informal acknowledgment or proof of descent, his conclusion should not be disturbed on appeal.
In the present case, there is a reasonable factual basis for the trial court's conclusion that Mildred is not the acknowledged daughter of Calis Matte. There is no evidence that Mildred's mother had any kind of an intimate relationship with Calis Matte shortly before or after Mildred's birth in 1935. About the time of Mildred's birth, her mother started living with a man named Angelle. From that time and all *1351 through her school years Mildred went by the name Angelle. Even after her mother started living with Calis Matte, Mildred retained the name of Angelle. It was not until Mildred decided to get married in 1953 that she changed her name to Matte. She did not have a birth certificate and she needed proof of her age to obtain a marriage license. So a "baptism certificate" was obtained showing she was born in 1935 and that her father was Calis Matte. The marriage license also shows her father as Calis Matte. Under these circumstances the trial judge could reasonably have concluded that these documents showed Calis Matte as the father simply because he was living with the mother in 1953 when the documents were obtained.
It is noteworthy that neither Mildred nor her mother claimed an interest in the succession of Calis Matte after his death in 1962. It was not until the total value of the property at stake was increased by the death of Zoe T. Matte that Mildred chose to assert her long dormant claim as the alleged legitimate or acknowledged daughter of Calis Matte. It is also significant that Mildred's mother was not called as a witness in her behalf at trial. The trial judge made mention of this in his written reasons.
It is apparent that the trial judge weighed all these factors and concluded on the record as a whole that Mildred was not even the natural child of Calis Matte. We recognize and acknowledge the warm, friendly relationship which developed between Mildred and Calis Matte after she and her mother started living in his house. Undoubtedly, bonds of friendship, respect and love approximately those found in typical legitimate family relations grew between Calis Matte and Mildred. These bonds, rooted in Calis Matte's apparent benevolence, cannot substitute for the biological or bloodline filiation upon which our intestate succession articles are structured.
If Calis Matte wished to grant Mildred rights to his succession, he could have provided for her in a will or adopted her.
We reiterate that we do not reach the previously mentioned constitutional issues because Mildred lacks the requisite standing to pursue such an argument.
For the reasons assigned, the judgment of the district court is affirmed. The costs of this appeal are assessed against the appellant, Mildred Arsement.
AFFIRMED.