LABORDE, Judge.
Plaintiff-appellant, Joseph Morris George, appeals the judgment of the trial court dismissing his suit for the wrongful death of his alleged daughter, Danielle M. Perrault. The trial court sustained the exception of no right of action offered by defendants, Patricia Breaux and State Farm Mutual Automobile Insurance Company (State Farm). The trial court found that appellant failed to show that he was more probably than not the father of Danielle. We agree.
On October 4, 1982, in Carenero, Louisiana, Danielle M. Perrault, a minor, was struck by an automobile driven by defendant, Patricia Breaux. As a result of the accident, this four year old child was brought to the hospital where she died two hours later. Appellant thereafter brought suit against Ms. Breaux and her insurer, State Farm, alleging that he is the natural or biological father of Danielle. Appellant, a married man and father of two, concedes that Danielle was an illegitimate child and admits that he has never formally acknowledged or legitimated her. He asserts that *1161 his biological relationship with Danielle can be inferred from his contacts with the child which he describes as “informal acknowledgment.”
The trial court heard testimony from several witnesses tending to show that appellant could be the father of Danielle. The testimony shows that appellant and Danielle’s mother, Jane Perrault, had sexual relations around the time of Danielle’s conception. Jane and appellant continued their relationship for several years. He would go to the Perrault household and visit with Jane and Danielle. Appellant asserts that he openly acknowledged that Danielle was his own and that he truly believes that he is her father.
It is apparent from the record that Ms. Perrault’s testimony was meant to assist appellant avow paternity. She noted that appellant would visit her family, but that the frequency of the visits plummeted when their relationship ended. She admitted that appellant was not her only beau near the time of Danielle’s conception. Another man, one Willie James Newsome, also enjoyed a liaison with Ms. Perrault. Ms. Perrault asserted two different months as the date of her last encounter with Mr. Newsome. She also stated that appellant gave her money and supported her (although no records of these alleged transactions could be produced) and that exhibits reflect the State, through the Welfare Department, in fact supported the family — not appellant.
We turn to appellant’s first assignment of error, which states:
“I. The Trial Court erred in finding that the plaintiff had no right of action because the plaintiff had not formally acknowledged the deceased child despite the finding of the Trial Court that the plaintiff had informally and tacitly acknowledged the child and believed the child to be his own, and did thereby require a burden of proof greater than that required by the law in paternity matters.”
Appellant asserts that he has firmly established his paternity through “informally acknowledging” Danielle. Moreover, appellant suggests that the trial court, incorrectly, would require parents of illegitimate children to formally acknowledge them in order to prove paternity.
In his oral reasons for judgment the trial court outlined the standard applied:
“The Court believes that there is a fifty/fifty chance Mr. George may be the father of this child; but is that sufficient [?] ... Mr. George is not plainly the father of the child ... [Mr. George] had many opportunities, I think, to publically [sic] declare this as my [sic] daughter. On the birth certificate, he could have gone to the Department of Health and entered his name. He could have gone before a Notary Public and made a declaration by authentic act....”
We find that the trial court properly applied the preponderance of the evidence standard in finding that appellant failed to carry his burden of proving paternity. We further find that the language referring to formal acknowledgment was merely preca-tory, i.e., that if the child had been formally acknowledged, no filiation suit would have been necessary. See La.C.C. art. 208.
Appellant relys primarily on two cases to support his claim of avowal of paternity: State v. Jefferson, 448 So.2d 907 (La.App.3d Cir.1984) and Succession of Matte, 346 So.2d 1345 (La.App.3d Cir.1977). These cases discuss the requirements of informal acknowledgment as sufficient proof of paternity. These cases stress the importance of (1) continuous or habitual acknowledgment, and (2) proof that the alleged father was generally reputed to be the father of the child. To this end, for informal acknowledgment[1] to be found, *1162 the parent must continuously and unequivocally recognize the child as his own. Id. at 1350.
Applying this test to the case sub judice, we find appellant’s proof of informal acknowledgment lacking. Appellant did not continuously and unequivocally recognize the child as his own. He led a double life, withholding any knowledge of the child from all but Ms. Perrault’s closest family members. The philandering appellant withheld all information of his other life from his legitimate family. This lack of disclosure concerning his affaire de co-eur necessarily precluded divulging information to his legitimate family regarding an enfant d’amour. Appellant stated that he never saw or visited Danielle out of the presence of Jane Perrault. He also disclosed that he never took her in public to picnics, to social events, or to church. Appellant did not unequivocably recognize the child as his own.
In addition to appellant’s equivocal recognition of Danielle, there was a showing that appellant was not Jane Perrault’s only paramour at the time of Danielle’s conception. Mr. Newsome, the “other man,” had absconded the state. His whereabouts and his blood type are unknown. The blood tests are therefore inconclusive. Appellant has not established filiation to the deceased child, Danielle, by a preponderance of the evidence.
We now turn to appellant’s second, third, and fourth assignments of error:
“II. The Trial Court erred in using the records of the natural mother through the use of the Department of Health and Human Resources client records as well as hertestimony regarding those records in an attempt to destroy the acknowledged status of the minor deceased child.
III. The Trial Court erred in using only the documents in the ‘welfare records’ of the Department of Health and Human Resources signed by the natural mother and erred in failing to consider the rest of the records and documents contained in the “welfare records” which would have corroborated her testimony at trial as to who was the natural father of the minor deceased child.
IV. The Trial Court erred in obtaining testimony of the natural mother through her testimony and submission of ‘welfare records’ by obtaining an improper grant of immunity in order to secure the testimony and documents of the Department of Health and Human Resources.”
Most of the witnesses testifying as to the avowal of paternity were presented by appellant. The trial court’s reasonable evaluation of their credibility should not be disturbed on appeal. State v. Jefferson, 448 So.2d 907, 908 (La.App. 3d Cir.1984).
A review of the record reveals inconsistencies in the testimony of Jane Perrault, Danielle’s mother. She initially indicated that she had had intercourse with Willie James Newsome within ninety (90) days of Danielle’s conception. Later, she stated that she was certain that she had had sex with no one other than appellant since November of 1976. Appellant was unaware of Ms. Perrault’s other sexual activities, stating in his deposition that he assumed he was the father “because I [Mr. George] was the only person dating her at the time.”
Ms. Perrault stated that Danielle called appellant “daddy” whenever the three were together. Correcting herself, she indicated that Danielle called appellant “daddy” and “Jose” equally. Earlier, appellant had denied that Danielle had ever called him “daddy.”
In order to determine Ms. Perrault’s veracity, the trial court reviewed, in camera, several Louisiana Department of Health and Human Resources (DHHR) records signed by Ms. Perrault attesting to the information contained therein. Ms. Per-rault, after discussing the matter with her attorney, signed the DHHR consent form, releasing to the court the application forms *1163 for benefits for Danielle. Six (6) representative documents from the file were entered into evidence. The documents show that Ms. Perrault had at various times represented to the DHHR that (1) she did not know who the father was; (2) that Willie James Newsome was the father; and (3) that Joseph Morris George was the father. These statements, made and signed at a time unpropitious to the issues raised in this case, justify the trial court’s lack of acceptance of Ms. Perrault’s testimony.
It was proper for the trial court to review these records. These records are the official records of a state agency, and as such are admissible under the public documents and/or the business records exception to the hearsay rule. See Griffin v. Succession of Velma King Branch, 479 So.2d 324 (La.1985). Such records are clearly relevant to the determination of credibility.
The trial court entered into evidence only six (6) of the many records of DHHR pertaining to Ms. Perrault. The other records were proffered and reviewed. Appellant suggests that, had the trial court considered all of the documents equally, then the testimony of Ms. Perrault and appellant would have been corroborated. Not all of the records were even signed by Ms. Perrault. Besides, no matter how many documents had been entered, the basic inconsistencies found in Ms. Perrault’s applications for benefits would not be cured.
Applications for assistance and information contained in the case records of clients of the DHHR are to be kept confidential. It is unlawful to use this information unless specifically authorized. LSA-R.S. 46:56(A). Confidential information may be released to an outside source only upon written request of the outside source and only after written waiver by the applicant. LSA-R.S. 46:56(D). These requirements were clearly met.
With chutzpah, appellant asserts that the trial court improperly granted Ms. Perrault immunity from criminal prosecution in order to secure the information and documents from the DHHR. LSA-R.S. 46:56(F) provides that certain information shall not be subject to waiver and shall not be released to sources not engaged in the administration of the programs of the DHHR. Only subsection (3) is conceivably pertinent: “(3) Information contained in applications for assistance and case records that is furnished to law enforcement agencies or courts to aid in the prosecution of criminal offenses related to any program.” (Emphasis added.) In turn, appellant refers us to La.C.Cr.P. art. 439.1, the law regarding a grant of immunity in criminal cases. Whether the trial court followed the proper immunity statute is irrelevant. In this civil suit, the trial court (the outside source) and Ms. Perrault (the applicant) complied with the requirements of subsection (D). No grant of immunity was ever necessary.
We now turn to appellant’s fifth and final assignment of error:
“V. The Trial Court erred in failing to allow the entry into evidence of the succession proceeding of Danielle Perrault which consisted also of an Affidavit of Death and Heirship naming Joseph Morris George as her father, and thereby estopping the defendant, State Farm Insurance Company from denying the paternity of Joseph Morris George. The said succession proceeding was instituted at the insistence of the defendant, State Farm Insurance Company, for purposes of paying the claim based upon the survival action of Danielle Perrault to her mother, Jane Perrault.”
Appellant suggests that because an agent of State Farm reviewed documents prepared for the Succession of Danielle M. Perrault, which succession papers name Joseph George father of the minor child, State Farm is estopped from denying the paternity of appellant. The trial court found these documents to be irrelevant and refused to admit them in evidence.
The record shows that these proffered exhibits were prepared by an attorney formerly representing both Jane Perrault and appellant in the matter of the Succession. *1164 State Farm did not prepare the succession papers nor did State Farm cause the papers to be drafted (as appellant urges). State Farm had no control over the assertions made in the pleadings and the company is certainly not bound by them.
At the outset, we note that the common law doctrine of judicial estoppel does not apply in Louisiana. Dornak v. Lafayette General Hospital, 399 So.2d 168 (La.1981). We further note that res judica-ta does not bar litigation of this instant case because the (1) identity of the “parties,” (2) identity of “cause,” and (3) identity of the “thing demanded” are not the same in the former action and the present litigation. La.C.C. art. 2286; Dornak, supra at 171.
In applying the doctrine of estoppel, it must be kept in mind that estoppels are not favored in law because they bar the normal assertions of rights. Guillory v. Calcasieu Parish Police Jury, 410 So.2d 1213 (La.App.3d Cir.1982). Before a court may invoke the doctrine, three elements must be found: (1) a representation by conduct or word; (2) justifiable reliance; and (3) a change of position to one’s detriment because of the reliance. Id. at 1218. The burden of affirmatively establishing the facts upon which the plea of estoppel is predicated rests upon the party invoking the estoppel. Appellant has failed to establish any of the necessary elements, particularly element number three.
For the above and foregoing reasons, the judgment of the trial court is affirmed at appellant’s cost.
AFFIRMED.

. The impotence of informal acknowledgment has been suggested in Succession of Alexander, 460 So.2d 19 (La.App. 1st Cir.1984), writ denied, 462 So.2d 652 (La.1985), which held that amendments to La.C.C. arts. 208 and 209 require informally acknowledged children to prove filiation as prescribed by La.C.C. art. 209. See abo Comment, A Survey Of Recent Changes In Intestate Succession Law Affecting Illegitimate *1162 Children — The Informally Acknowledged Child Is The Ultimate Loser, 29 Loy.L.Rev. 323 (1983).