560 So.2d 111 (1990)
Kathleen TALLEY, Plaintiff-Appellee,
v.
Ceola STUCKEY and the Succession of James Merkel Stuckey, Defendant-Appellant.
No. 88-1352.
Court of Appeal of Louisiana, Third Circuit.
April 18, 1990.
Writ Denied June 29, 1990.
*112 Rush & Rush, Warren D. Rush, Lafayette, for defendant-appellant.
Mouroux, Domengeaux, James H. Domengeaux, Lafayette, for plaintiff-appellee.
Before FORET, STOKER and LABORDE, JJ.
FORET, Judge.
The sole issue before us is whether or not the trial court was correct in finding that Kathleen Talley, on behalf of her minor child, Garett James Talley, established the paternity of the decedent, James Merkel Stuckey, by clear and convincing evidence.
In September, 1985, Kathleen Talley, plaintiff-appellee herein, filed a petition to establish filiation against the Succession of James Merkel Stuckey, the alleged natural father of her minor child, Garett. Also named as defendant was Ceola Merkel Stuckey, James Merkel Stuckey's mother and sole heir. Talley also intervened in the Succession of James Merkel Stuckey, praying that Garett be declared the son and sole heir of James Merkel Stuckey.
After Ceola Stuckey's death in March of 1986, Estelle Rouly, Ceola's former sister-in-law and Merkel's aunt, was substituted as a defendant, as executrix of Ceola Stuckey's succession and administratrix of James Merkel Stuckey's succession. These suits were consolidated for trial. A separate opinion is being rendered this date in Succession of Stuckey, 560 So.2d 114 (La. App. 3 Cir.1990).
After trial on the merits, the trial court found that Talley, on behalf of the minor child, Garett, had met the burden of proving that Garett was the natural child of the decedent, James Merkel Stuckey. Estelle Rouly, appearing for the successions of both Ceola and James Merkel Stuckey, appealed the judgment of the trial court. In affirming the trial court, we find that the evidence was sufficient to establish that James Merkel Stuckey was the biological father of Garett Talley.
La.C.C. art. 209 states, regarding the establishment of the paternity of a deceased person, as follows, in pertinent part:
"B. A child not entitled to legitimate filiation nor filiated by the initiative of the parent by legitimation or by acknowledgment under Article 203 must prove filiation as to an alleged deceased parent by clear and convincing evidence in a civil proceeding instituted by the child or on his behalf within the time limit provided in this article."
The official comment to this article states, in pertinent part:
"(b) Proof of filiation may include, but is not limited to: `Informal' acknowledgment; scientific test results; acknowledgment in a testament; and proof that the alleged parents lived in a state of concubinage at the time of conception. Contrary evidence would include but not be limited to the types of proof outlined in the Official Comments to Civil Code Art. 187."
See also Sharff v. Tanner, 486 So.2d 1047 (La.App. 2 Cir.1986); LeBlanc v. LeBlanc, 497 So.2d 1361 (La.1986).
Proof of filiation to an alleged deceased parent must be made by "clear and convincing evidence." This standard requires that the evidence, taken as a whole, *113 must show that the facts sought to be proven are "highly probable." See McCormick's Handbook on the Law of Evidence, 796 (2d ed.1972).
Talley established that she and Merkel had been living together for approximately eight months at the time Garett was conceived and for several months thereafter. She moved to her mother's home when she was approximately two or three months pregnant and remained living at her mother's at the time of trial. The evidence was undisputed that she and Merkel had sexual relations during the ten or eleven months in which she lived in Merkel's home. Additionally, although the appellant attempted to discredit Talley, there is no evidence whatsoever that Talley had sexual relations with any other men during the probable period of conception. To the contrary, evidence brought out by the appellees, regarding Talley's past relationships, established that she was a faithful partner while involved in a sexual relationship. Unfortunately, due to Merkel's untimely death when the child was nine months of age, no blood tests were able to be obtained to aid in determining paternity.
The evidence revealed that Merkel, through statements and conduct, recognized the high probability that he was Garett's father.
"An informal acknowledgment must be of a continuous, habitual, and unequivocal nature and of sufficient frequency that there can be little doubt that the alleged father truly believes himself to be the father of the child."

Thomas v. Smith, 463 So.2d 971, 975 (La.App. 3 Cir.1985).
Among the acts of acknowledgment, Merkel supplied Garett with diapers, shoes, and numerous toys. He also bought Garett a stroller, a Johnny-jump-up, a wagon, a wheelbarrow, a motorcycle, and a walker. He brought Garett flannel sheets stating, upon their delivery, that he wanted his little boy to be warm. The evidence was consistent that Merkel was considered eccentric, frugal, and possessive of both material possessions and people. In light of Merkel's frugality, his generous gifts to Garett are strong circumstantial evidence of acknowledgment.
Other testimony revealed that Merkel was very excited when Garett was born, was upset when Talley did not call him to take her to the hospital, and was upset that Talley did not name the baby after him. After the birth, he commented on how Garett resembled him and as Garett grew, he bragged about Garett's abilities; all indicative of being a proud parent. He visited the baby frequently and the three of them, Talley, Merkel, and Garett, would go out shopping, etc. together. He encouraged Talley to breast-feed the child, which she did until Garett was nearly two years of age. At one point, he even gave the child a silver cup, engraved with the child's name and date of birth and inscribed with the message "from Daddy."
Two witnesses testified that Merkel had offered them money to plant drugs on Talley so that he would be able to obtain custody of Garett. One of these offers took place while Talley was still pregnant but after she had moved out of Merkel's house. The evidence was also undisputed that Talley had sought legal advice and her attorney had sent Merkel a letter shortly before his death, regarding his child support obligation.
The evidence also established that Merkel did have a serious fertility problem when tested in 1973 and 1977 although he was not considered sterile by medical standards. Merkel was well aware of his fertility problem; so much that he threw Talley's birth control pills away because he did not believe he could father a child.
There was evidence that, on occasion, Merkel denied that he was the father of Garett. This is understandable in light of the fact that he erroneously believed he was sterile. His hesitancy in formally acknowledging Garett and his bewilderment upon becoming a parent for the first time at age 50 was solely due to his belief that he was sterile. In fact, the evidence also revealed that Merkel would have been delighted to have an heir, but for his perplexed state of mind as to his ability to father a child.
*114 Talley's fertility expert, Dr. Laurence Lipschultz, testified that state of the art testing is much more conclusive as to fertility and sperm function than the tests which Merkel took in the 1970's. Dr. Al Beacham, testifying for appellant, opined that, according to the tests done in the 70's upon Merkel, it would be just short of a miracle if Merkel could father a child. He did concede that he had recommended that Merkel see Dr. Lipschultz for further testing and he would defer to Dr. Lipschultz as being a much more knowledgeable specialist than he. He testified that although the tests he gave Merkel were accurate in the 70's, compared to modern tests available, they would be considered backwards and crude.
Although Merkel's sperm count may have been low, the evidence does not show that he was sterile and unable to father a child. We cannot, in reliance upon outdated testing procedures performed several years prior to conception, find that it was not highly probable that Merkel is Garett's natural father. See State v. Bolden, 519 So.2d 362 (La.App. 2 Cir.1988).
Although Merkel's actions in denying his paternity of Garett on certain occasions may prevent his acts of acknowledgment from rising to the level of an informal acknowledgment, this finding does not prevent a determination of paternity. As stated above, the official comment to C.C. art. 209 expressly provides that proof of filiation may include, but is not limited to "informal" acknowledgment. Informal acknowledgment is merely one method of proving filiation and any acts of acknowledgment may be considered in determining whether Talley has sustained her burden of proof. See Sharff v. Tanner, supra. Cunningham v. Dicarlo, 539 So.2d 1315 (La.App. 3 Cir.1989). As such, we find that there is a reasonable factual basis for the trial court's conclusion regarding proof of descent, and therefore, his conclusion should not be disturbed on appeal. See Succession of Matte, 346 So.2d 1345 (La.App. 3 Cir.1977). Viewing the evidence cumulatively, we find that the trial court was correct in finding that Talley proved filiation by clear and convincing evidence.

CONCLUSION
Based upon the foregoing, the judgment of the trial court is affirmed. Costs of this appeal are to be paid by the estates of Ceola Stuckey and James Merkel Stuckey, and Estelle Rouly, in her capacity as the Executrix of the Estate of Ceola Merkel Stuckey and as the duly qualified Administratrix of the Estate of James Merkel Stuckey.
AFFIRMED.