586 So.2d 1373 (1991)
Doris CHATELAIN
v.
STATE of Louisiana, DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT, et al.
No. 90-C-1852.
Supreme Court of Louisiana.
September 9, 1991.
*1374 Roy S. Halcomb, Jr., Broussard, Bolton, Halcomb & Vizzier, for plaintiff-applicant.
Albert M. Hand, Jr., Cook, Yancey, King & Galloway, Thomas G. Zenter, Jr., Theus, Grisham, Davis & Leigh, for defendant-respondent.
Lawrence Kent McCollum, for City of Shreveport, amicus curiae.
LEMMON, Justice.
This is a wrongful death and survival action filed by the mother of Leon Malone, based on fatal injuries received by Malone in a 1982 vehicular accident. The principal issue involves the correctness of the dismissal of the action on an exception of no right of action. Both of the lower courts excluded plaintiff's claim because Malone was survived by a member of a higher category of the beneficiaries specified in La.Civ.Code art. 2315, which at the time of Malone's death provided in pertinent part as follows:
The right to recover all other damages caused by an offense or quasi offense, if the injured person dies, shall survive for a period of one year from the death of the deceased in favor of: (1) the surviving spouse and child or children of the deceased, or either such spouse or such child or children; (2)the surviving father and mother of the deceased, or either of them, if he left no spouse or child surviving; and (3) the surviving brothers and sisters of the deceased, or any of them, if he left no spouse, child, or parent surviving. The survivors in whose favor this right of action survives may also recover the damages which they sustained through the wrongful death of the deceased.
As used in this article, the words "child", "brother", "sister", "father", and "mother" include a child, brother, sister, father, and mother, by adoption, *1375 respectively. (emphasis added).[1]
Facts
In April, 1983, plaintiff (Malone's mother) filed the instant action against the driver of a vehicle involved in the accident, the driver's liability insurer, the Bienville Parish Police Jury, and the Department of Transportation and Development. In her petition plaintiff alleged that Malone was not married at the time of his death and did not have any children. Plaintiff subsequently settled with the driver and his insurer, reserving her rights against the remaining defendants.
On August 7, 1986, one of the remaining defendants filed an exception of no right of action, alleging that Malone was the father of one child, Amber Tullis, who was born to Peggy Tullis about six months before Malone's December, 1979 marriage to the child's mother.[2] Defendants further asserted that Malone had informally acknowledged Amber Tullis as his child and that Amber Tullis, as Malone's surviving "child," was a primary beneficiary under Article 2315 with the right to recover survival and wrongful death damages to the exclusion of secondary beneficiaries such as plaintiff.
On August 30, 1986, Peggy Tullis Malone, as the natural tutrix of Amber Tullis, filed a motion to substitute herself as the proper party plaintiff in the pending action. Defendants and plaintiff opposed the motion on the basis that the tutrix had not alleged any grounds for substitution under La.Code Civ.Proc. art. 801. Plaintiff also filed an exception of prescription, contending that Amber Tullis had lost her right to prove filiation by failing to bring an action for filiation within the time limitation provided in La.Civ.Code art. 209 for an illegitimate child to bring such an action.[3]
The trial judge denied the tutrix's motion to be substituted as plaintiff, noting that the tutrix could either seek review of the ruling or file a separate suit.[4] The tutrix did neither.
The judge then conducted a trial on the exception of no right of action. Finding the evidence clear and convincing that Malone was the father of Amber Tullis, the judge maintained the exception of no right of action and dismissed plaintiff's suit.
The court of appeal affirmed in a two-to-one decision, holding that a parent of a tort victim has no right of action to recover wrongful death or survival damages when the tort victim is also survived by an informally acknowledged illegitimate child, even though the child has not judicially asserted filiation timely. 566 So.2d 156. The court held that an informally acknowledged illegitimate *1376 child who could have brought an action under Article 209 was a "child" for purposes of Article 2315. Reasoning that survivorship is determined as of the moment of the tort victim's death, the court concluded that a mother's right of action is excluded by the fact of the child's existence, regardless of whether the child has brought a filiation action. Comparing the present situation to one in which a legitimate child elects not to bring a wrongful death action or fails to bring the action timely, the court deemed irrelevant the failure of the illegitimate child in this case to seek filiation timely or to bring a wrongful death action timely.
The dissenting judge, noting that La.Civ. Code art. 3556(8)'s definition of children includes "those persons born of the marriage, those adopted, and those whose filiation to the parent has been established in the manner provided by law," reasoned that an illegitimate child who has not established filiation "in the manner provided by law" by filing a timely Article 209 action does not fall within the definition of children. Stating that a person is not a child under Article 2315 merely by virtue of having once possessed a claim for establishing filiation, the dissenting judge concluded that an illegitimate child's right to establish filiation is personal to the child and that when an illegitimate child is precluded by time limitations from asserting her personal right to establish filiation, third parties are likewise precluded. The focus of the dissenting judge was thus on prescription as to the filiation claim rather than as to the wrongful death claim.
This court granted certiorari, primarily to determine whether a tortfeasor may establish the filiation of an illegitimate child in order to defeat a tort victim's mother's claim for damages, when the illegitimate child did not choose to exercise timely her personal right to establish filiation with the tort victim. 569 So.2d 971.
Status as Child
The critical requirement for classification of a person as a child under Article 2315 is the biological relationship between the tort victim and the child.[5]Warren v. Richard, 296 So.2d 813 (La.1974). The child with a biological connection to the tort victim, whether a legitimate, legitimated or illegitimate child, has the right to bring an action for wrongful death and survival damages. See La.Civ.Code arts. 2315, 199, 3556(8); Levy v. Louisiana, 391 U.S. 68, 88 S.Ct. 1509, 20 L.Ed.2d 436 (1968). However, when the child is neither legitimate at birth nor subsequently legitimated by the parent, Article 209 imposes a time limitation for establishing the filiation necessary to qualify as a child under Article 2315. The principal focus of the parties in the lower courts was on the effect of the failure of the child or a third party to establish filiation timely.
After this court granted plaintiff's application for certiorari, defendants took a different approach to Amber Tullis' classification as a child under Article 2315. In brief to this court, defendants assert that Amber Tullis was a legitimate child under La.Civ. Code arts. 198 and 199.[6] Citing Succession of Mitchell, 323 So.2d 451 (La.1975), defendants contend, as a new argument in support of the judgments of the lower courts, that Amber Tullis was legitimated under Article 198 by the subsequent marriage of her mother and father and by her father's informal acknowledgment of her as his child.[7] Defendants further point out that *1377 La.Civ.Code art. 179 was amended in 1979 to include in the definition of legitimate children those "who have been legitimated as provided hereafter." Accordingly, defendants argue that since Amber Tullis enjoyed legitimate filiation under Article 198, she was not required to institute an Article 209 proceeding to establish filiation with Malone. Referring to Spaht, Developments in the Law, 1985-1986Successions, 47 La.L.Rev. 471 (1986), defendants insist that Article 209 and its time limitation do not apply to an illegitimate child who has been legitimated by the initiative of a parent.
In a reply brief plaintiff concedes that there is no requirement for institution of an Article 209 filiation action when the child has been legitimated under Article 198 and that there is no time limitation for claiming legitimation under Article 198. See Griffin v. Succession of Branch, 479 So.2d 324 (La.1985). However, plaintiff argues that an Article 198 action for legitimation requires proof of formal or informal acknowledgment by the particular parent with whom legitimation is sought and that much of defendants' evidence (such as the testimony of Amber Tullis' mother identifying Malone as the child's father) does not tend to prove acknowledgment by the alleged father. Plaintiff further argues that the burden of proof for informal acknowledgment, under either Article 209 or Article 198, should be clear and convincing evidence, when the alleged parent is dead, because of the significant possibility of fraudulent claims. Therefore, plaintiff challenges the proof of informal acknowledgment essential for legitimation under Article 198.
In oral argument before this court defendants expressly abandoned their argument regarding Amber Tullis' status as a filiated illegitimate child under Article 209 and relied solely on her status as a legitimate child under Article 198.
Legitimation under Article 198
Legitimation is an advantage by which the attribute of legitimate child is fictitiously conferred, with all its consequences, upon a child conceived outside of marriage and which operates in favor of both the parents and child. Legitimation has an incontestable moral influence by inducing the transformation of irregular households into legitimate families. 1 M. Planiol, Civil Law Treatise §§ 1549, 1551 (La.State Law Inst. trans. 1959).
For legitimation under Article 198 there are two separate requirements. First, there must be a marriage subsequent to the child's birth between the biological father and the biological mother of the child. Second, there must be an acknowledgment of the child by the parent or parents. Marriage without acknowledgment is insufficient to establish legitimation by subsequent marriage.
Amber Tullis was born on July 7, 1979. Peggy Tullis and Malone, neither of whom had been previously married, were married on December 27, 1979.[8] Malone never formally acknowledged the child under the requirements of La.Civ.Code art. 203.[9] Defendants' contention regarding Amber Tullis' legitimation under Article 198 therefore turns on the proof of Malone's informal acknowledgment of the child.
Informal Acknowledgment
The threshhold questions as to informal acknowledgment involve the burden of proofwho has the burden of proof as to Amber Tullis' status as a legitimate child of Leon Malone, and is the standard of proof by a preponderance of the evidence or by clear and convincing evidence?
The party who brings an action must have a real and actual interest that he *1378 asserts. La.Code Civ.Proc. art. 681; Teachers' Retirement System of Louisiana v. Louisiana State Employees' Retirement System, 456 So.2d 594 (La.1984). In the present case, plaintiff arguably must prove, as part of her cause of action, that she was the mother of Leon Malone. However, defendants challenged plaintiff's right of action under La.Code Civ.Proc. art. 927 on the basis that her claim as Malone's mother was excluded by the existence of a child of Leon Malone. By asserting this basis for the exception, defendants have the burden of proving that Amber Tullis was a child of Leon Malone under Article 2315.
As to the standard of proof, plaintiff contends that proof of legitimation should be required by clear and convincing evidence. While Article 209 requires proof of filiation by clear and convincing evidence when the alleged parent is dead, Article 198 does not specify a standard of proof for legitimation.[10] However, plaintiff argues that since there is no time limitation for asserting legitimation under Article 198 while Article 209 has a limitation of one year from the alleged parent's death, there is even more reason for imposing the higher standard of proof to claims of legitimation when the alleged parent is dead.
The burden of proof by clear and convincing evidence requires a party to persuade the trier of fact that the fact or causation sought to be proved is highly probable, i.e. much more probable than its non-existence. McCormick on Evidence § 340(B) (3d ed. 1984); Succession of Bartie, 472 So.2d 578 (La.1985); Succession of Lyons, 452 So.2d 1161 (La.1984); Louisiana State Bar Association v. Edwins, 329 So.2d 437 (La.1976). This burden is an intermediate one between the burden of proof by a preponderance of the evidence and the burden of proof beyond a reasonable doubt. Louisiana State Bar Association v. Edwins, 329 So.2d 437 (La.1976). The requirement of proof by clear and convincing evidence has traditionally been applied in cases in which there is a special danger of deception or in which the particular type of claim is disfavored on policy grounds. McCormick, supra; Succession of Lyons, 452 So.2d 1161 (La.1984).[11]
It is logical that a higher standard of proof should be required for both filiation and legitimation when the alleged parent is dead. Claims by an illegitimate child to the property of an alleged parent or to the status of a wrongful death beneficiary of the alleged parent, when not presented until after the death of the alleged parent, are replete with danger of fraud. As stated in Spaht, Developments in the Law, 1981-1982Persons, 43 La.L.Rev. 535, 537 (1982), in regard to proof of filiation, "[a]fter the death of the alleged parent, whose knowledge concerning the fact or probability of his filiation to the child is superior, the vulnerability to fraudulent claims is significantly increased." There is generally no less danger of deception when the illegitimate child is basing his claim on legitimation by subsequent marriage and informal acknowledgment, rather than on filiation.[12] Indeed, because there is no time limitation on asserting legitimation, the *1379 danger may be even greater.[13]
We conclude that a claim of legitimation under Article 198 to an alleged parent who is dead must be proved by clear and convincing evidence. The relevant inquiry here is whether informal acknowledgment was proved by clear and convincing evidence.
While Article 198 refers to formal and informal acknowledgment and Article 203 lists specific requirements for formal acknowledgment, the Civil Code does not specify the requirements for informal acknowledgment. The jurisprudence, however, has recognized informal acknowledgment as a method of proving filiation and has set forth standards for evidence constituting informal acknowledgment. Succession of Vance, 110 La. 760, 34 So. 767 (1903); Succession of Corsey, 171 La. 663, 131 So. 841 (1930); Taylor v. Allen, 151 La. 82, 91 So. 635 (1922); see also Oppenheim, Acknowledgment and Legitimation in Louisiana, 19 Tul.L.Rev. 325 (1945).[14]
In discussing informal acknowledgment, appellate decisions have generally referred to the standards set forth in the original Article 209 for proving paternity, such as the alleged father's acknowledgment of the child in formal writings or in public or private conversations, causing the education of the child as his own, and living in concubinage with the mother in his home at the time of the child's conception. Other conduct which has been considered to constitute informal acknowledgment by the alleged father includes rearing the child in his home, naming the child in his will, giving the child his surname, and holding the child out in the community as his own. Keene, Irregular Successions in Louisiana, 7 Loy.L.Rev. 94, 102-3 (1954), and cases cited therein. Moreover, courts have been reluctant to recognize an informal acknowledgment for purposes of filiation unless the father has recognized the child as his own unequivocally and on several occasions. Succession of Vance, 110 La. 760, 34 So. 767 (1903) (one statement by the alleged father that the doctors were wrong in predicting his children would be afflicted because Eliza James was "as healthy as anybody" did not "suffice to invest [James] with the title of a legally acknowledged ... child"); Succession of Corsey, 171 La. 663, 131 So. 841 (1930) (statements by the alleged father acknowledging Ethel Casson as his child at various times to various parties constituted acknowledgment); Succession of Matte, 346 So.2d 1345 (La.App. 3rd Cir.1977) (an informal acknowledgment of filiation must be unequivocal and sufficiently frequent so that there is little doubt the alleged father truly believed he was the father of the child).
As to the evidence in the present case, which was offered to prove filiation as well as informal acknowledgment by Malone, Peggy Tullis testified that she met Malone in August of 1978 and became sexually intimate with him in September or October of 1978, but never lived with him as husband and wife until after the child's birth. She claimed not to have had sexual relations with any other man during the time she was intimate with Malone or during the nine months prior to the child's birth, although she admitted illicit relationships with other men before and after Malone. While she was pregnant, she and Malone stopped dating and planned never to see each other again. She did not tell the doctor during the pregnancy that Malone was the father. She did not list Malone's name on the birth certificate or on the birth announcements. Malone did not visit the child in the hospital or pay any of *1380 the medical bills associated with the child's birth. She did not give the child Malone's surname. Malone did not even see the child until more than two months after the birth. During the three months she and Malone lived together after their marriage, the child lived with the maternal grandmother and spent most of her time there. Malone did not take the child places or do things with the child. Malone never contributed to the child's support. While she stated that Malone gave gifts to the child, she admitted that she could not recall Malone's ever telling a relative or friend that he was the father of the child.[15] In April, 1980, she left Malone after she had him arrested for abusing the child, and they never lived together again. The first time the child ever saw Malone's mother was at Malone's funeral.
A sheriff's deputy who investigated the child abuse charges against Malone in April, 1980 (three to four months after Malone's marriage to Peggy Tullis) testified that Malone affirmatively answered an inquiry whether he was the father of the child. He also recalled that Malone was "miserably upset" and insisted that he would never do anything to hurt his child intentionally.
Other evidence was Peggy Tullis' petition for divorce, which stated that Amber was a child born of her marriage to Malone, and the uncontested judgment of divorce, which gave the mother permanent custody and reasonable visitation rights to Malone.
When Malone was arrested after the divorce for criminal neglect of family, he pleaded guilty and was released on probation, with conditions of probation requiring that he "pay $150 per month for support of your minor child beginning 2-20-82." Malone never made another payment after the $150 he paid at the time of his release on probation.
Also introduced into evidence was a picture of Amber Tullis with Malone's grandmother, taken in December of 1979, shortly after Malone's marriage to Peggy Tullis.
The trial judge, applying a clear and convincing evidence standard for proof of filiation under Article 209, found that Malone was the child's father. Because of defendants' change in position, however, the critical issue is whether the above evidence was sufficient to prove clearly and convincingly informal acknowledgment by the father under Article 198.
We conclude that the scant evidence of Malone's conduct with regard to Amber Tullis was insufficient to satisfy the clear and convincing standard for proof of informal acknowledgment. Insofar as this record shows, Malone did not acknowledge Amber Tullis as his child in writings or in public or private conversations, did not live in concubinage with the mother at the time of conception, did not visit the child at the hospital, did not pay the expenses of the delivery, did not rear the child in his home, did not educate the child as his own, and did not hold her out in the community as his child.
Malone's failure to contest the allegations in the divorce petition clearly did not constitute unequivocal acknowledgment that the child was his. Moreover, his guilty plea after his arrest for criminal neglect of family and his payment of $150 for support of the child can be explained on an equally plausible basis as motivation at his involuntary appearance in court without an attorney to get out of jail as quickly as possible. Significantly, Malone never made another payment after his release.
The only substantial evidence of acknowledgment was the testimony of the deputy sheriff in the child abuse case that Malone admitted he was the child's father. Inasmuch as the abuse charge involved *1381 bleeding or scratches in the area of the child's vagina, plaintiff suggests Malone may simply have been reluctant to deny any biological relationship with the child during the police investigation. Plaintiff points out that Malone's plea that he would not intentionally abuse his child was successful, since the district attorney refused the charge.
The guilty plea in the criminal neglect case and the answer during the investigation of the child abuse case are virtually the only evidence of conduct by the father bearing on the issue of informal acknowledgment. This evidence, standing almost alone and viewed against the mother's negative answers to questions about acts which are customarily used to prove informal acknowledgment, simply does not rise to the level of clear and convincing proof sufficient to establish informal acknowledgment essential for legitimation under Article 198. Compare Succession of Bartie, 472 So.2d 578 (La.1985), which involved proof of filiation under Article 209.

Decree
The judgments of the lower courts maintaining the exception of no right of action are reversed, the exception is overruled, and the case is remanded to the district court for further proceedings.
DENNIS, J., concurs with reasons.
CALOGERO, C.J., dissents and assigns reasons.
DENNIS, Justice, concurring.
I respectfully concur. If the unfiliated illegitmate had a wrongful death claim, it has prescribed. Court of Appeal Judge Hightower's dissent is persuasive that it was not the legislative aim to enable a tortfeasor to revive such a claim and use it as an affirmative defense against the just claims of a deceased's legitimate relatives. Furthermore, the general rule is that a person has a right to use a prescribed obligation as a defense only when he is the person who had a right to enforce it. La. C.C.P. art. 424. The defendants had no right to enforce the illegitimate's cause of action or obligation, so they could not use it as a defense.
CALOGERO, Chief Justice, dissenting.
In this wrongful death action brought by the decedent's mother, a secondary class member under La.C.C. article 2315, the defendants attempted to bar the claim by establishing the existence of a primary beneficiary, an illegitimate child of the decedent. Apparently this child had not brought a timely filiation action.[1] The decedent's mother contended that defendant ought not be able to defeat her claim by introducing proof that decedent was survived by a child with a preferential entitlement under Article 2315.
The defendants filed an exception of no right of action because of the existence of decedent's alleged illegitimate daughter. The district court heard the exception and ruled that the defendants had proved with clear and convincing evidence that the decedent had informally acknowledged the child. Because of this finding regarding paternity, the court maintained the exception and dismissed plaintiff's suit. The court of appeal affirmed. We granted the writ to consider whether, under these circumstances, with no filiation action having been timely asserted, the defendant could nonetheless prove the existence of an illegitimate child.
The majority resolves the lawsuit without answering this question which prompted *1382 the writ grant. The defendant argued, in this court for the first time, that the applicable law is not La.C.C. article 209 regarding filiation (which both lower courts had considered), but rather La.C.C. article 198 pertaining to the legitimation of illegitimate children by the marriage of their parents which requires that the alleged parent has either formally or informally acknowledged the child. Responsive to that approach, the majority determined from the record that defendant's evidence was insufficient to prove the requisite informal acknowledgment.[2] This holding reverses a contrary finding by both the district court and the court of appeal, each of which had relied upon what they perceived as convincing evidence of the decedent's paternity (which was the focus of their inquiry, as opposed to legitimation).[3] It is the reversal of the lower courts' factual finding with which I disagree and which prompts my dissent.
The majority concludes that defendant's evidence regarding the informal acknowledgment did not rise to the necessary convincing standard because of the absence of some actions customarily used to substantiate informal acknowledgment such as: 1) writings or public and private conversations, 2) living in concubinage with the mother at the time of conception, 3) visiting the child at the hospital, 4) paying the expenses of the delivery, 5) rearing the child in his own home, and 6) holding the child out as his own to the community. (Regarding the latter, there is, however, the contrary evidence noted below).
On the other hand, the evidence relied upon by the lower courts included the following: 1) decedent married the child's mother soon after her birth and, according to the mother's testimony, was the only man with whom she had been intimate around the time of conception; 2) according to the mother, decedent referred to the child as his daughter to friends and family, although the mother did not provide specific examples or witnesses; 3) decedent gave the girl gifts and took her and the mother to his family's get-togethers, as corroborated by a Christmas photograph of the child with decedent's grandmother at her house; 4) decedent admitted being the child's father to a deputy sheriff investigating the child's alleged abuse by decedent; and 5) decedent pleaded guilty in a criminal neglect of family proceeding following his separation from the child's mother. Additionally, the child is receiving Social Security *1383 by virtue of her status as a child of the deceased.
As did both lower courts, I would find the evidence of informal acknowledgment convincing, and the child's legitimation thus proven. For these reasons, I dissent.
NOTES
[1] These provisions were subsequently reenacted as La.Civ.Code arts. 2315.1 and 2315.2.
[2] The other remaining defendant filed a similar exception on September 24, 1986.
[3] La.Civ.Code art. 209, before its amendment in 1984, provided:

A. A child not entitled to legitimate filiation nor filiated by the initiative of the parent by legitimation or by acknowledgment under Article 203 must prove filiation as to an alleged living parent by a preponderance of the evidence in a civil proceeding instituted by the child or on his behalf within the time limit provided in this article.
B. A child not entitled to legitimate filiation nor filiated by the initiative of the parent by legitimation or by acknowledgment under Article 203 must prove filiation as to an alleged deceased parent by clear and convincing evidence in a civil proceeding instituted by the child or on his behalf within the time limit provided in this article.
C. The proceeding required by this article must be brought within one year of the death of the alleged parent or within nineteen years of the child's birth, whichever first occurs. This time limitation shall run against all persons, including minors and interdicts. If the proceeding is not timely instituted, the child may not thereafter establish his filiation.
The 1984 amendment added the following to the end of section C: "except for the sole purpose of establishing the right to recover damages under Article 2315. A proceeding for that purpose may be brought within one year of the death of the alleged parent and may be cumulated with the action to recover damages."
[4] The judge did not rule on the prescription issue.
[5] Article 2315 also expressly includes an adopted child within its definition of a child.
[6] La.Civ.Code art. 198 provides:

Illegitimate children are legitimated by the subsequent marriage of their father and mother, whenever the latter have formally or informally acknowledged them as their children, either before or after the marriage.
La.Civ.Code art. 199 further provides:
Children legitimated by a subsequent marriage are legitimate.
[7] Under La.Code Civ.Proc. art. 2133 B, an appellee in the court of appeal or a respondent in this court may assert in favor of the judgment any argument supported by the record, whether or not the party has appealed, answered the appeal or applied for certiorari.
[8] They were divorced in May of 1982.
[9] La.Civ.Code art. 203 provides:

The acknowledgment of an illegitimate child shall be made by a declaration executed before a notary public, in the presence of two witnesses, by the father and mother or either of them, or it may be made in the registering of the birth or baptism of such child.
[10] This requirement was incorporated into Article 209 after Malone was killed. However, the amendment has been held to be procedural and therefore applicable to cases that are tried after the amendment. Succession of Sanders, 485 So.2d 126 (La.App. 2nd Cir.1986), cert. denied, 487 So.2d 443; Thomas v. Smith, 463 So.2d 971 (La.App. 3rd Cir.1985); and State through Department of Health and Human Resources v. Essex, 427 So.2d 71 (La.App. 4th Cir.1983), cert. denied, 430 So.2d 82.
[11] The trial judge used the clear and convincing evidence standard, but applied the standard to the determination of filiation. There is a difference, however, between proving paternal descent and proving acknowledgment by the father, in that the latter proof focuses solely on the conduct of the father. Succession of Vance, 110 La. 760, 34 So. 767 (1903).
[12] Defendants contend that the fact the alleged father married the child's mother justifies a lower standard of proof for legitimation under Article 198 than for filiation under Article 209. However, while some facts such as the proximity of the marriage to the child's birth may be relevant proof on the issue of informal acknowledgment when considered with other circumstances, the mere fact of marriage does not justify a lower standard of proof when the claim is brought after the alleged parent is dead.
[13] The burden should be at least as high when a third party asserts legitimation as when a child does so.
[14] Professor Oppenheim defined acknowledgment as a conscious effort on the part of the parent or parents to raise the status of the child. Id. at 328.
[15] She testified that "we was always like around people that he worked with and his friends and stuff like that and he would mention something you know about his baby and little girl." However, she did not persist in this assertion after being confronted with her deposition testimony that she could not recall Malone's ever making such a statement. Further, no relatives or friends testified that Malone ever admitted he was the child's father.
[1] The child's mother moved to substitute herself (natural tutrix) as the proper party in place of the plaintiff a few weeks before trial. Plaintiff filed an exception of prescription contending that the time to filiate under La.C.C. article 209 had prescribed because, even if the Motion to Substitute Proper Party Plaintiff could be construed as a filiation action, that motion was filed more than four years after the decedent's death; Article 209 requires a filiation action to be brought within one year of death of the alleged parent. The trial court ruled from the bench dismissing the tutrix's motion to substitute, but took the exception of prescription under advisement. No ruling was ever issued on the prescription exception.
[2] Formal acknowledgment of the child by the decedent was not asserted by the defendant.
[3] La.C.C. article 198 states that "illegitimate children are legitimated by the subsequent marriage of their father and mother, whenever the latter have formally or informally acknowledged them as their children, either before or after the marriage." The Civil Code does not articulate specific requirements for informal acknowledgment, but the jurisprudence has set forth certain standards, generally the same as for proving paternity under the original La.C.C. article 209.

This court noted the broadening legislative amendments favoring legitimation of children born out of wedlock in Succession of Mitchell, 323 So.2d 451 (La.1975). Although that case involved the narrow question of whether adulterous children could be legitimated under Article 198, Justice Tate explained that "the clear legislative intent of the 1948 amendment of Article 198 was to permit the subsequent marriage of the parents to legitimate all children (except incestuous) born of them before their marriage, including those who were adulterous." Id. at 455 (emphasis added).
Recent appellate decisions have also favored findings of paternity under the clear and convincing standard, even when contradictory or vague evidence was presented. See e.g., Talley v. Stuckey, 560 So.2d 111 (La.App. 3d Cir. 1990) (upholding a finding of paternity although decedent had denied on occasion being the father and basing its conclusions upon the mother's testimony of sexual exclusivity with decedent and his gift-giving to the child). Two other appellate cases in which filiation was held not proven by the convincing standard involved problems with the mother's credibility, Jordan v. Taylor, 568 So.2d 1097 (La.App. 4th Cir.), writ denied, 571 So.2d 650 (1990), and insufficient evidence, Hines v. Williams, 567 So.2d 1139 (La. App. 2d Cir.), writ denied, 571 So.2d 653 (1990). In the latter action, the mother only presented evidence that she and the alleged father had cohabited during conception and that friends of the decedent "took it for granted" that the child was his.