WICKER, Judge.
State Farm Mutual Insurance Company appeals a judgment decreeing Beth Lynn Santiny to be the illegitimate daughter of Rickye Brown and awarding the policy limits of $100,000.00 to her mother, Hope Theresa Santiny, on her behalf. In addition to the issue of whether or not filiation had been proven by clear and convincing evidence, State Farm raises the issues of whether it was entitled to a jury trial and whether or not it was entitled to a credit for policy proceeds paid to another claim *1246 ant, Rickye Brown’s mother, Charmon Bou-dreaux. We affirm.
Rickye, a sixteen-year-old, was riding with his friend Dean Pitre in a car belonging to Rodney Rigaud. Dean lost control of the car and smashed into a telephone pole. Both boys were killed.
State Farm is Rigaud’s insurer. It investigated the claim for Rickye’s death and learned that Rickye was survived by his mother, Charmon Boudreaux, and his father, Ronnye Brown, Sr. Rickye lived with his mother and stepfather, Philoman Bou-dreaux. Rickye was not married, and State Farm’s adjuster did not inquire about any illegitimate children Rickye might have had.
State Farm considered invoking a concur-sus proceeding because of the competing claims of Mrs. Boudreaux and Mr. Brown. However, it was able to settle Mrs. Bou-dreaux’s claim for $75,000.00, leaving it $25,000.00 for Mr. Brown’s claims.
In August of 1985, almost one year after the accident and five months after State Farm’s settlement with Mrs. Boudreaux, Hope sued State Farm on behalf of her minor daughter, Beth.
State Farm then refused to pay the remaining policy limits to Mr. Brown, and Mr. Brown sued. State Farm excepted on the grounds of no right of action, i.e. that Rickye was survived by a child; and Mr. Brown’s suit was apparently dismissed. State Farm then sued the Boudreauxs for reimbursement. [Mr. Boudreaux, although not Rickye’s father, had paid his medical and funeral expenses.] Hope’s suit for wrongful death damages and State Farm’s suit for reimbursement were consolidated. State Farm requested a jury, but this request was denied on the basis that filiation actions are not entitled to jury consideration. State Farm and Hope stipulated that State Farm’s policy limits were $100,000.00 and that Beth’s damages, if she was Rick-ye’s daughter, exceeded the policy limits.
The judge tried only the filiation action and did not rule on whether or not State Farm would be entitled to rescind its settlement with Mrs. Boudreaux.
Hope must prove Beth’s filiation to Rickye, since he is deceased, by clear and convincing evidence. La.C.C. art. 209 B. The evidence does not indicate that Rickye ever formally acknowledged Beth, so Hope must prove informal acknowledgement. The requirements for informal acknowl-edgement are not contained in legislation. Chatelain v. State of Louisiana, DOTD, 586 So.2d 1373 (La.1991); Succession of Matte, 346 So.2d 1345 (La.App. 3rd Cir.1977).
In discussing informal acknowledgment, appellate decisions have generally referred to the standards set forth in the original Article 209 [pre 1984 amendment, irrelevant to the instant decision] for proving paternity, such as the alleged father’s acknowledgment of the child in formal writings or in public or private conversations, causing the education of the child as his own, and living in concubinage with the mother in his home at the time of the child’s conception. Other conduct which has been considered to constitute informal acknowledgment by the alleged father include rearing the child in his home, naming the child in his will, giving the child his surname, and holding the child out in the community as his own.... Moreover, courts have been reluctant to recognize an informal acknowledgment for purposes of filiation unless the father has recognized the child as his own unequivocally and on several occasions....
Chatelain v. State of Louisiana, DOTD, supra at 1379.
We agree with the factual finding that Rickye was Beth’s father. Rickye was the only boy Hope was dating when she became pregnant. She frequently came to stay with Rickye in his room [Rickye’s parents were managing and living in a condominium in Grand Isle], and his parents sometimes had to chase her home in the early morning hours. Although Rickye’s older brother, Ronnye, was sometimes present in the room they shared, Ronnye’s girlfriend was there with him at those times. Both Rickye and Hope were high school students while they were dating. *1247 When Hope became pregnant, she and Rickye went to her parents and then his about the impending birth. Mr. and Mrs. Boudreaux wanted the kids to get married, but Mrs. Santiny would not allow it because Rickye and Hope were too young. Hope and Rickye broke up when she was six months pregnant, partly because of his parents’ wishes but also partly because of some incident involving a boy Hope had dated briefly before she met Rickye. “Everyone”, that is friends of the couple and the community in general in Grand Isle, knew that Hope was carrying Rickye’s baby.
When Hope went to the hospital to give birth, Rickye asked Ronnye to go with her as a representative of the family because he thought someone from the family should be there. Mr. and Mrs. Boudreaux did not approve of Rickye’s going with her. Hope did not have Rickye’s name put on the birth certificate as Beth’s father because she understood from the hospital personnel that was not allowed because she and Rickye were not married. In addition, Hope’s father wanted the baby’s name to be “Santiny.” Friends of Hope and Rickye heard him talk about quitting school, getting his GED, and going to work so he could get married to Hope and support her and the baby.
A few days after the baby was born, Rickye called and asked if he could come and see the baby. He held Beth and cried. There is a photograph of him holding Beth at this time. Rickye continued to visit several times a week. The record also contains photographs showing a possible family resemblance between Rickye and Beth at various ages. Rickye told Hope they had a beautiful baby and that he would do everything he could to help. He kept a picture of Beth in his bedroom.
Rickye was sixteen years old'when he was killed, and Beth was about three months old. Rickye had a weekend job on a fishing boat and was killed returning from his first weekend on the job. The Boudreauxs called Hope to come to the wake; and Mrs. Boudreaux held Beth for comfort and cried, hoping that the baby would be a piece of her dead son. Beth’s photograph was placed in the coffin with Rickye, and Mrs. Boudreaux turned over to Hope money collected at the wake and Rickye’s $300 paycheck from his weekend of work. The Boudreauxs took Rickye’s body to Texas [Mrs. Boudreaux is originally from Texas] and paid for Hope’s and Beth’s plane fare. Hope was introduced at the funeral and visits to Mrs. Boudreaux’s family as the mother of Rickye’s child, Beth. There was an obituary card, which was probably also published in a newspaper, which notes that Rickye was survived by a child named Beth Lynn Santiny. In addition to the trip to Texas for the funeral, the Boudreauxs took Beth and Hope to visit family at Thanksgiving and Christmas, gave Beth presents, and saw Beth regularly until they moved away from Grand Isle, apparently about the same time Hope filed suit for damages. Since their return to Grand Isle, the Boudreauxs once again see Beth.
Mrs. Boudreaux received a $75,000.00 settlement from State Farm with which she purchased a new car and built a new house. She told Hope that she was building an extra room so that she and Beth could come and stay anytime. Mrs. Boudreaux also told Hope that she would use part of the money to help her and Beth out. Mrs. Boudreaux was hurt because she didn’t get to see Beth more often and was glad and proud to have her as her grandchild. The Boudreauxs both believe that Beth is Rick-ye’s child, despite having had occasional doubts; and Mrs. Boudreaux would like to have visitation rights with Beth. The Bou-dreauxs also, however, recalled Rickye’s having at least once expressed concern over Beth’s parentage.
Because of his age and financial status as a high school student, Rickye did not pay for Hope’s medical expenses or support Beth. No one thought it was necessary to have blood tests done to prove parentage because everyone assumed Beth was Rick-ye’s daughter. Because of the age of the child, three months, the question of Beth’s education never arose.
*1248 Not all the factors outlined in Chatelain v. State of Louisiana, DOTD, supra, are present in this case. This is largely a result of the ages and financial situation of the parents and the age of the child at the time of Rickye’s death. There are sufficient factors present, however, to support the judge’s determination that Rickye has been proven to be Beth’s father: Rickye’s acknowledgement of Beth as his child, the exclusive sexual relationship between Hope and Rickye at the time of Beth’s conception, reputation in the community, and the acceptance of Beth as a grandchild by Mr. and Mrs. Boudreaux. We do not believe that the judge was clearly wrong in his decision. “Whether there has been adequate proof of descent from an alleged parent is a question of fact.” Hines v. Williams, 567 So.2d 1139, 1142 (La.App. 2d Cir.1990), writ denied 571 So.2d 653 (La.1991). We will not disturb his determination. Rosell v. ESCO, 549 So.2d 840 (La.1989).
With regard to the jury issue, we find as a matter of fact that the judge clearly indicated that he would confine the trial to the filiation question. Thus, his denial of a jury trial was correct under La.C.Civ.P. arts. 1731 and 1732(3). We recognize that the judgment and our opinion deal solely with the filiation question, and we make no ruling on what rights State Farm might have against Mr. and Mrs. Boudreaux.
Considering the judge’s alleged failure to grant State Farm a $75,000.00 credit, we hold that the stipulation between the parties is sufficient to support his award of the policy limits to Hope Santiny on behalf of her daughter, Beth. That stipulation proves that the policy limits were $100,000/ $300,000.00; that Beth’s damages [if filiation is proved] exceed $100,000.00; that as a consideration for dismissal of its insured Rodney Rigaud “State Farm will remain in the lawsuit as a direct and viable party defendant against whom judgment may be cast to the extent of its policy limits”, and that Hope’s recovery will be limited to the “policy limits of $100,000.00, legal interest thereon and assessable costs.” (Emphasis added.)
In addition, we believe that Beth should not be penalized for State Farm's mistaken payment of benefits to Mrs. Bou-dreaux, whether or not the mistake was in good faith. Payment to the wrong person does not generally diminish what is owed to a creditor. Louisiana & So. Life Ins. v. New Orleans S.S., 384 So.2d 594 (4th Cir. 1980). It seems that a minimal amount of investigation in Grand Isle would have revealed Beth’s existence, since “everyone” knew about her.
We affirm the judgment in favor of Hope Theresa Santiny, for and on behalf of her minor child, Beth Lynn Santiny, and against State Farm Mutual Automobile Insurance Company in the amount of $100,-000.00, plus legal interest and court costs. State Farm must pay the costs of this appeal.
AFFIRMED.