945 So.2d 139 (2006)
Godiva HAWKINS-ROBERTSON, Steven Hawkins, Sr., and Joell Jackson on Behalf of her Minor Child Kevin Jackson, and the Succession of Steven Hawkins, Jr.
v.
Eric HESSLER and the New Orleans Police Department.
No. 2006-C-0004.
Court of Appeal of Louisiana, Fourth Circuit.
November 8, 2006.
*140 Penya M. Moses-Fields, City Attorney, Joseph V. DiRosa, Jr., Chief Deputy City Attorney, Franz Zibilich, Associate City Attorney, Heather M. Valliant, James B. Mullaly, Assistant City Attorneys, New Orleans, LA, for Eric Hessler and New Orleans Police Department.
Craig S. Sossaman, Craig S. Sossaman, P.L.C., Metairie, LA, for Godiva Hawkins Robertson, et al.
(Court composed of Judge JAMES F. McKAY III, Judge DAVID S. GORBATY, Judge EDWIN A. LOMBARD.
DAVID S. GORBATY, Judge.
On January 3, 2006, the City of New Orleans filed this writ application seeking review of a judgment of the trial court denying its motion for court ordered DNA of the minor child, Kevin Jackson, and its motion to disqualify plaintiffs' counsel. This court denied the writ, finding no abuse of discretion. Defendants sought writs from the Louisiana Supreme Court, which were granted. The Supreme Court remanded the matter to this court for briefing, oral argument, and opinion. Hawkins-Robertson v. Hessler, XXXX-XXXX (La.5/5/06), 927 So.2d 319. For the reasons set forth below, we deny the writ and affirm the judgment of the trial court.
FACTS
The instant litigation arises out of the death of Steven Hawkins, Jr., who was shot by police officer Eric Hessler in 2000. Mr. Hawkins parents, Godiva Hawkins Robertson and Steven Hawkins, Sr., along with Joell Jackson, on behalf of the minor child, Kevin Jackson, filed survival and wrongful death actions against Eric Hessler and the New Orleans Police department (NOPD).[1] In the original petition, the plaintiffs alleged that Kevin Jackson was the decedent's only child. Several months after the suit was filed, the plaintiffs, Godiva Hawkins Robertson, Steven Hawkins, and Joell Jackson, filed a petition to establish filiation and paternity wherein they alleged, "It is thought that Steven Hawkins, Jr. was the father of the minor child, Kevin Jackson, born on September 29, 1995." Accordingly the parties requested that the court appoint Reliagene Technologies, Inc. (Reliagene) or another dependable paternity testing entity to perform paternity/DNA testing on Kevin Jackson, on his mother, Joell Jackson, and on the parents of the decedent, Steven Hawkins. On November 2, 2000, the trial court signed an order authorizing Reliagene to perform the requested paternity testing upon the minor, Kevin Jackson, his mother, Joell Jackson, and the parents of the decedent, Godiva Hawkins Robertson and Steven Hawkins, Sr., to determine *141 whether the decedent was the father of Kevin Jackson.
The results of the court ordered paternity testing are apparently unknown to the City; however, in March of 2001, the plaintiffs filed a motion to dismiss their petition to establish filiation and paternity. Additionally, they filed a supplemental and amending petition deleting the allegations that Kevin Jackson was the decedent's only child. Further, in June of 2001, Joell Jackson, on behalf of her minor child, Kevin Jackson, filed a motion to dismiss her son's claims in the survival and wrongful death actions, reserving unto the grandparents the rights to pursue their actions. By order dated June 20, 2001, the trial court dismissed, with prejudice, the claims of the minor child.
On March 9, 2005, the City allegedly served a subpoena upon the minor child, through his mother, directing the child to appear and provide a DNA sample. A copy of the subpoena was also allegedly served on plaintiffs' counsel. Included with the City's writ application is a copy of a motion to quash the City's subpoena requesting that the minor child submit to a blood test pending a hearing. In the memorandum filed with the trial court in support of the motion to quash the City's subpoena requiring the minor child to appear for DNA testing, the plaintiffs averred that while they had initially alleged that the minor child was the child of the decedent, "[i]t was later determined that in fact, though the decedent, Steven Hawkins, Jr., treated Kevin Jackson, Jr., as his son, he, in fact, was not the biological father of the minor child."[2]' For that reason, the plaintiffs alleged that the claims of the minor child had been dismissed. Inasmuch as the child was a non-party to the litigation, the plaintiffs argued that a subpoena directing invasive medical testing was improper and an abuse of the subpoena power of the court. Plaintiffs argued that if the defendants wished to have the paternity of the minor child established, it should have filed a petition to establish paternity and sought an order directing that such blood testing be performed. Accordingly, the plaintiffs requested that the subpoena and subpoena duces tecum issued to the minor child through his mother be quashed.
The City filed an opposition memorandum to the motion to quash their subpoena. They argued that the issue of whether Kevin Jackson is in fact the son of the decedent is relevant to the issue of whether the grandparents can now pursue the remaining claims because parents have no right of action in a survival or wrongful death claim if there is a surviving child. The City argued that it could not properly defend against the parents' claims against it without proof that the minor child is in fact the child of the decedent. They argued that information concerning the child's paternity was relevant and discoverable under La. C.C.P. art. 1422 and 1464. Moreover, the City alleged that it was now merely requesting a DNA test in the form of a non-invasive, painless cheek swab of the minor child.
Following a hearing on July 29, 2005, the trial court signed a judgment on August 8, 2005 denying the City's motions to disqualify counsel and for court ordered DNA testing.[3] The City seeks review of this judgment.
*142 DISCUSSION
The City cites numerous cases for the proposition that DNA testing is an acceptable method of establishing paternity. However, it does not appear that this was a contested issue in the trial court. Rather, in its motion to quash the City's subpoena, the plaintiffs merely argued that the City had no right to issue a subpoena to a non-party to the litigation for DNA testing. In essence, the plaintiffs argue that the City has no right to establish the paternity of the minor child because the child is no longer a party to these proceedings.
However, the City argues that determining whether the child is the child of the decedent is necessary in order for it to properly defend the remaining case of the decedent's parents. It notes that pursuant to La. C.C. art. 2315.1[4] and La. C.C. art. 2315.2,[5] the parents have no right to maintain survival and wrongful death actions if the decedent left a surviving child. If the minor child, Kevin Jackson, is a child of the decedent within the meaning of the two statutes, the parents cannot maintain their actions against the City.
In general, "parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action." La. C.C.P. art. 1422. Connick v. Brechtel, 98-0543, p. 7 (La.App. 4 Cir. 4/22/98), 713 So.2d 583, 587. Assuming the child could be considered a child of the decedent if it can be shown he is the decedent's biological child, the results of any DNA testing would conceivably be relevant to the City's defense.
The writ application contains an order signed by the trial judge dismissing with prejudice the action filed on behalf of the child. That order was signed in June of 2001, and no one filed an objection or appealed that judgment. It is a final judgment. Since these proceedings have been dismissed, the child no longer has any right to pursue survival or wrongful death claims. Thus, the question arises as to whether the City can seek to prove paternity when the child can no longer do so.
A similar issue was addressed by the Second Circuit in Chatelain v. State, Dept. of Transp. and Development, 566 So.2d 156 (La.App. 2 Cir.1990), reversed, 586 So.2d 1373 (La.1991). In that case a decedent's mother timely filed a wrongful death action alleging that the decedent was not survived by wife or children. The tutrix of decedent's illegitimate child filed an untimely motion to intervene alleging filiation. Following the denial of the motion, the defendants filed an exception of no right of action against the mother. The trial court found decedent had informally acknowledged the illegitimate child and sustained the exception of no right of action against the mother. The mother *143 appealed and the second circuit affirmed, finding that the fact that the child existed excluded the mother of decedent as a class two wrongful death beneficiary. The appeal court concluded that the legitimated child who had failed to timely filed suit would not be legally deemed to be non-existent.[6] On appeal, the Louisiana Supreme Court reversed and remanded the case, finding that the evidence did not support the trial court's finding that the decedent had informally acknowledged the child. The court did not directly address the issue of whether the fact that the alleged legitimated child's claim had prescribed prevented the defendants from proving paternity. However, in a concurring opinion, Justice Dennis addressed the issue stating:
I respectfully concur. If the unfiliated illegitimate had a wrongful death claim, it has prescribed. Court of Appeal Judge Hightower's dissent is persuasive that it was not the legislative aim to enable a tortfeasor to revive such a claim and use it as an affirmative defense against the just claims of a deceased's legitimate relatives. Furthermore, the general rule is that a person has a right to use a prescribed obligation as a defense only when he is the person who had a right to enforce it. La.C.C.P. art. 424. The defendants had no right to enforce the illegitimate's cause of action or obligation, so they could not use it as a defense.

Chatelain, 586 So.2d at 1381.
The City cites no cases wherein a non-party was ordered to submit to a physical examination. Even in case involving a request for a medical examination of a party, the mover must demonstrate (1) that the physical or mental condition of the party sought to be examined is in controversy, and (2) that good cause exists for requiring the party to submit to the examination. LSA-C.C.P. art. 1464; Leaf v. Leaf, XXXX-XXXX (La.App. 4 Cir.8/15/01), 796 So.2d 42, (La.App. 4 Cir.2001). It is required that the party seeking to compel a DNA test must establish a prima facie showing of the reasonable possibility of a match or non-match, depending on the party seeking the test and the reasons, before obtaining the requested order. Hargrave v. Brown, 00-1082 (La.App. 5 Cir. 3/22/01), 783 So.2d 497.
The only alleged basis for requiring a paternity test in the instant case is that the plaintiffs originally averred that it was thought that the minor child was the child of the decedent and sought paternity testing to prove it. No information has been provided concerning the results of that court-ordered testing or the basis for the plaintiffs' later allegation that the minor child was not the decedent's biological child. Thus, this court has no way of determining the possibility of a match or non-match. No basis exists for allowing paternity testing because the City failed to establish a prima facie case of reasonable possibility that the minor child is the child of the decedent.
The trial court is afforded wide discretion in granting physical examinations La. C.C.P. art. 1464; Abadie v. Metropolitan Life Ins. Co., 00-344 (La.App. 5 Cir. 3/28/01), 784 So.2d 46. We find that the trial court did not abuse its discretion by refusing to order the minor child to submit to paternity testing simply to satisfy the unexplained doubts of the City.
*144 The City also seeks review of its motion to disqualify plaintiffs' counsel on the basis that he will be called as a material witness, presumably on the issue of paternity. Since this court has determined that the trial court did not err in denying the motion to order DNA testing, the issue of whether plaintiffs' counsel should be disqualified is moot
CONCLUSION
Accordingly, for the foregoing reasons, we deny the writ and specifically find that the trial court did not abuse its discretion.
WRIT DENIED.
NOTES
[1] This case has been before this court several times, and detailed facts can be found at Robertson v. Hessler, XXXX-XXXX (La. App 4 Cir. 4/14/04), 881 So.2d 116, writ denied, XXXX-XXXX (La.7/2/04), 877 So.2d 149.
[2] Exhibit 7, p. 1 of memorandum in support of motion to quash subpoenas.
[3] The judgment further decreed that the discovery deposition of Joell Jackson's mother scheduled for August 2, 2005 be limited to inquiry as to the location of Joell Jackson.
[4] La. C.C. art. 2315.1 provides in relevant part:

A. If a person who has been injured by an offense or quasi offense dies, the right to recover all damages for injury to that person, his property or otherwise, caused by the offense or quasi offense, shall survive for a period of one year from the death of the deceased in favor of:
(1) The surviving spouse and child or children of the deceased, or either the spouse or the child or children.
(2) The surviving father and mother of the deceased, or either of them if he left no spouse or child surviving. (emphasis added)
[5] La. C.C. art. 2315.2 provides in relevant part:

A. If a person dies due to the fault of another, suit may be brought by the following persons to recover damages which they sustained as a result of the death:
(1) The surviving spouse and child or children of the deceased, or either the spouse or the child or children.
[6] The dissenting judge however stated that "child" as used in La. C.C. art 2315 referred only to those person who timely establish filiation according to law. Moreover he opined that the right to establish filiation was personal to the child or someone acing on the child's behalf and that the defendants should not be allowed to establish filiation.